ILLINOIS CENTRAL RAILROAD COMPANY *v.* A. & J. TRON-
STINE & CO.

1. RAILROAD COMPANY. *Action against as bailee. Loss of goods. Negligence.
Instruction.*

In an action to recover damages for the loss of certain goods alleged to have
been destroyed by fire while in the custody of the defendant, a railroad
company, it is error for the court to instruct the jury that if the goods were
delivered to the agent of the defendant at Jackson, to be carried over its
road to Hazlehurst whenever the plaintiff should order them to be shipped
and they were burned before shipment, then it is incumbent on the defendant
to show that they were burned *without any fault* on its part or that of its
agents. If the defendant, upon the facts assumed in the instruction, was a
gratuitous bailee, it was only liable for gross negligence, and if a bailee for
hire, only for the neglect of reasonable and ordinary care.

2. SAME. *Loss of goods received as bailee. When liability as common carrier
attaches.*

If, in the case above referred to, the goods were delivered by the plaintiff to
the baggage agent of the defendant at Jackson, to be shipped over its road
to Hazlehurst on the evening of the next day, unless the plaintiff should
give directions to the contrary, and no directions were given within the
period indicated, then the defendant thereafter held the goods under the
duty of immediate shipment, and if they were burnt while so held the de-
fendant is liable for the loss, if liable at all, as a common carrier.

3. SAME. *Goods received by agent for accommodation. Liability of company for
loss.*

But if such goods were delivered as baggage, and there was a regulation of the
railroad company, known to the plaintiff, that baggage should be received
only for immediate carriage, and the baggage agent took charge of such
goods as a matter of accommodation to the plaintiff, without any direction
as to their being shipped, then the defendant company is not liable for the
loss thereof as carrier or otherwise.

4. SAME. *Action against for loss of goods. Evidence of. Statement of agent as res
gestæ.*

The goods, in the case above stated, having been delivered to the baggage agent
on Friday and destroyed by fire on Sunday night next following, the plain-
tiff on Monday next went to the defendant's baggage-room where the goods
were when burnt and had a conversation with the baggage agent, who related
to him the circumstances of the burning so far as he knew, he having been
in the room asleep when the fire was discovered. The testimony of the

plaintiff, narrating what the baggage agent told him about the burning, is competent evidence of the loss upon which the action is based, it being a part of the *res gestæ* thereof.

APPEAL from the Circuit Court of Lincoln County.

HON. J. B. CHRISMAN, Judge.

This action was brought by A. & J. Tronstine & Co. against the Illinois Central Railroad Company to recover damages for the loss of certain trunks and their contents, which belonged to the plaintiffs and which were destroyed by fire while in the defendant's baggage-room in the city of Jackson in Mississippi.

The declaration contained five counts, the first and fifth charging the defendant as a common carrier, while the second, third, and fourth charge it as bailee.   The defendant plead *non assumpsit* and not guilty.

At the trial, in January, 1887, E. L. Bowen, a witness for the plaintiffs, testified as follows : " In February and March last I was drummer or traveling salesman for the plaintiffs, who are wholesale clothing merchants of Cincinnati, Ohio.   I had in my custody and control three large trunks well filled with samples of clothing. On Friday, about the last of February, 1886, I had these trunks and their contents with me at the Edwards House in Jackson, Miss., and about two o'clock P. M. of that day I caused the Edwards House porter to carry the trunks over to the depot of the defendant.   I followed on and delivered the trunks to Walmsley, the agent of the Illinois Central Railroad, and told him that I was going home to Brookhaven and expected to be in Hazlehurst on the following Monday, and wanted him to ship my trunks to Hazlehurst on that night or the next morning, unless I telegraphed him not to ship them to Hazlehurst; that I would meet them at Hazlehurst on Monday following—was not absolutely certain that I wished my trunks sent to Hazlehurst.   I asked him to keep them until Saturday, the next day, and, if I did not telegraph him to the contrary by Saturday evening, I wished him to send my trunks on to Hazlehurst.   He said he would do so and received the trunks with that understanding.   I left Jackson on the next regular train coming south and came on home to Brook-

haven. On Monday morning I received a telegram from Mr. Montgomery, ticket agent of the defendant at Jackson, that the trunks were burned, and on Monday evening I went up there, arriving on the evening train at about five o'clock. I went to the depot or baggage-room and saw that the trunks were burned. They were then sitting within about eighteen inches of the stove in the baggage-room—in fact, they were upon top of each other, with ends north and south, and one of them, nearest the bowl of the stove, was within eight inches of it. The trunks were burned in the centre and on the sides, a hole in each about the size of my hat."

" The witness was here asked what Walmsley, defendant's baggage-master, said as to how the fire started, and as to the position of the baggage before the burn.

" The defendant by its counsel objected. The objections were all overruled and defendant excepted.

" Thereupon the witness answered that Walmsley told him that the trunks were in the baggage-room, situated relative to the stove and to each other just about as they were at the time of the conversation, and that the fire occurred Sunday night after midnight or Monday morning before day, say about three o'clock A. M. Monday, March 2, 1886, and they must have caught from the stove; that he (Walmsley) was asleep upon the baggage in the room—it was full of trunks—and that he was awakened by the smoke and was nearly smothered, etc.

" The witness, on cross-examination, admitted that his territory for journeying on plaintiffs' business was the whole State of Mississippi, and that he was in the habit of traveling on all three of the railroads centering at Jackson, and that he. frequently went and carried his sample trunks on each of said roads, and was acquainted with their baggage regulations. The witness admitted that he did not pay Walmsley any storage charges, and did not pay him anything. He further admitted that if he had shipped his trunks on the first regular train for the transportation of said trunks to Hazlehurst, and had left them there until the next Monday morning, that the company would have charged him

storage; that he knew no storage was charged at the place of receiving such baggage, but that storage was customarily charged at the place to which the baggage was shipped if it remained over forty-eight hours uncalled for.  He admitted that he and Walmsley were personal friends, and that he received no check or waybill for the trunks, but stated that Walmsley told him that he would check the trunks and send the checks to him at Hazlehurst."

Walmsley, being sworn as a witness for the defendant, testified as follows: "That on Friday, about the last of February, 1886, three large drummer's trunks were brought to the platform near the joint baggage-room [of the defendant and two other railroad companies, for all of whom he was baggage-master] by the porter of the Edwards House and placed there; that in a few minutes thereafter Mr, E. L. Bowen, whom he had known for a year or two or more, came over and claimed the trunks, and told him that he did not know when he would want them; that he (Bowen) was going home, and that Bowen asked him (the witness) to take them and take care of them until he would call for them· or wire or write him when and where to ship them; that he took them merely to accommodate Bowen and as a personal matter, as one friend would do for another, and placed them in the baggage-room. Bowen did not say when or where or on what road he would wish them sent, did not say anything about Hazlehurst, did not tell him to ship them to Hazlehurst, if not ordered to the contrary, by Saturday evening's train; that on Monday morning, or maybe Tuesday morning afterward, about 2d of March, about three A. M., witness was aroused from sleep in the baggage-room and found it full of smoke, and he got up and there was so much smoke he could not tell where the fire was; he called for help, and Mr. Montgomery came with a fire-extinguisher, and they finally discovered that the smoke was issuing from Bowen's trunks; they were burning on the inside, and were not burning next to the stove at all.  Witness said he could not account for the fire; that the stove was a very small one, and Bowen's trunks were one upon the other, each upon its end, and that the three reached seven feet

in height, and that the metallic bottoms of the trunks were next to the stove, and the upper one was only exposed to the stovepipe— the stove was no higher, not as high, as the bottom trunk; said trunks were between thirty and thirty-six inches from the stove. Witness, under the rules of the company, was only authorized to receive baggage for immediate carriage, and to receive it from persons who presented tickets, and when received he was required to give checks for it. Bowen presented no ticket and received no check or way-bill. Witness further said that he did not make the statement to Bowen, when the latter came up to Jackson after the burn, as testified by Bowen; that he did not tell him the trunks before the fire were situated as to the stove and in the room about as they were at the time Bowen was there after the fire, but told Bowen that the trunks were as he has now testified."

The court gave an instruction in the following language:

" 2. The court instructs the jury for the plaintiffs that if they believe from the evidence that the agent of the plaintiffs, Bowen, delivered the goods to the agent of the defendant, at the baggage-room of the defendant in the city of Jackson, to be shipped over its road to Hazlehurst whenever Bowen should notify him (the agent) to ship them, and that the goods, while in the custody of the defendant, were burned, it is incumbent on the defendant to show that they were damaged or burned without any fault on its part or the fault of its agents, and this is true though Bowen paid nothing to the agent for the storage of the goods."

The verdict and judgment were in favor of the plaintiffs, and the defendant appealed.

*W. P. & J. B. Harris,* for the appellant.

The defendant was a common carrier, and nothing more. Its business was not combined with that of forwarding agents or ware-housemen, and it is clear that at the time of the delivery or deposit it was not known to the owner himself whether the defendant would be a carrier at all of the trunks, or whether another company, having the privileges of the joint baggage-room, would be selected.

It is obvious that to leave baggage under these conditions estab-

lished no relations of any kind with the company whose baggage-master Walmsley was.   It is a fact now judicially known that the business of transportation is divided into freight and passenger departments, that baggage-masters are attached, as their function implies, to the passenger department.   Witness Walmsley alone speaks of the rules of the company regulating his dealing with baggage, and there is no conflict on the point that as baggage is the privilege of passengers, and connected with those who acquire that character, he is to take in charge only where a ticket is presented. This ticket entitles the passenger to a check, and that is the accepted evidence of the company's liability.   Bowen presented no ticket on any company and got no check.

These rules are not unreasonable.   They are simple and easy to follow, and are better known to the drummer class than any other. They are well known to every traveler.   In the condition of the baggage-master here, as the agent for three companies, the baggage must connect itself with some company by a ticket, or neither company can be held responsible in any character.

Walmsley had no authority to bind any company by becoming depositor except for immediate transportation.   He had nothing to do with freight, and his duty required him to ask to see the ticket before dealing with baggage.

Bowen, by what appears, had taken none of the steps required by the rules to connect any company with the baggage deposited. No custom or usage is shown to modify the rule as proved, and this fact not only shows that Walmsley was right in saying he took the baggage as a personal matter, but Bowen himself proves that he could receive it in no other way.   He asked it as a personal favor.   These private arrangements which familiar friends make with agents acting under rules are well enough if they are fulfilled, but if not, the party venturing upon them, instead of following the reasonable rules which these transportation companies are bound to adopt for order, regularity, and certainty, must be content to stand on the friendly arrangement.

Walmsley puts the case as the absence of all marks for consignment of ticket or check would put the case under the rules.  Bowen

chose to rely on the spirit of accommodation in the servant to do what he had no power to do, except as a private party, if at all. Walmsley appears by the light of the facts as stepping down and out of his post as a joint baggage-master to a friendly private agent of Bowen.

The court erred in not granting a new trial. The liability of the railroad company was not fixed in any capacity. If at all, only as a gratuitous bailee.

The burden of proving negligence was assumed by the plaintiff, and it was not proved in any degree except by the erroneous admission of Bowen's evidence as to what Walmsley told him in a narrative after the event. The object in introducing this evidence was to prove negligence by the declarations of an agent not part of the *res gestœ*. Bowen had been informed of the burning by an agent of the company, and although Walmsley's account of what he saw and knew was very important, it was important as evidence only, and he was a competent witness. This court has frequently held that the narrative declarations of agents after the event are not admissible. The error here was material.

The second instruction is wrong because until the order was given in no view of the case was the company other than a gratuitous bailee, answerable only for gross negligence, and the plaintiff must prove the negligence—an indefinite gratuitous bailment, as is stated, which the baggage-master had no right to accept for the company. In addition to that, unless the order was given, it is clear that no particular company could be made liable. Where the destruction of goods deposited for safe-keeping is shown to have been caused by accidental fire, the burden of proof is on the plaintiff. Abbott's Trial Ev. 556.

The instruction points to a tortious negligence. 1 Wharton Ev., § 363.

When no storage is charged for baggage at the initial point, and the baggage is accepted, not for immediate transportation, but for accommodation, can there be a gratuitous bailment? We answer that where transportation has not been determined at all, and the baggage is merely deposited for safe-keeping until the owner makes up his mind, we have such case on reason and authority.

We cite not only 44 Iowa, but *Michigan S. Ry. Co.* v. *Schurz,* 7 Mich. (3 Cooley) 518 ; *Little Rock Ry. Co.* v. *Hunter,* 42 Ark. 200.

On the general subject we cite, Angel Carr., § 124 ; *Texas & Ry. Co.* v. *Tapp,* 16 Am. & Eng. Ry. Cases 120 ; Schouler Bailments 369.

*R. H. Thompson,* on the same side.

It is clear that Bowen was to become a passenger from Jackson to his home, Brookhaven, before the happening of the contingency which was to determine whether he would wish his trunks shipped or not; and, of course, his passage was without reference to that contingency. This being so, it cannot be said that his passage from Jackson to Brookhaven, and the payment of his fare therefor, could be or amount to any consideration for the keeping of the trunks. It is not shown or pretended that Bowen would not have gone to Brookhaven had Walmsley declined (as he should have done) to receive the baggage. Bowen's going to Brookhaven was independent of the trunk transaction.

Nor can it be said that the anticipated probable carriage of the trunks, and the freight thereon, was a consideration for the storage. Where were they to be carried? According to Bowen, they were, upon a contingency, to be transported to Hazlehurst. The law and the railroad commission fixed the tariff for the carriage of goods, and the pay to the defendant was the same whether previously stored or not. This court knows further, what everybody else knows, that the appellant is without a competitor in the business of a carrier between Jackson and Hazlehurst, and it was not afraid, if Bowen's contingency happened, that it would lose the opportunity of hauling these precious trunks. So, upon any view, no consideration was paid or expected for the keeping of the trunks in the baggage-room at Jackson.

Walmsley received them, and Bowen knew it, contrary to the rules of his company; the railroad never in any way ratified his acts, never derived any benefit from them, and had it carried the goods, would have received no greater pay than it was entitled to receive for the carriage alone. Nothing was demanded as hire for the bailment, and nothing was paid.

If the carriage was absolutely agreed upon and was surely to be made—the time of shipment only being contingent—a much stronger case would be presented than the one now before the court, and even such a case is one of gratuitous bailment. Schouler on Bailments 373, and authority cited.

*A. C. McNair,* for the appellees.

1. First, as to appellant's liability as a common carrier.

Bowen, when he deposited the goods with Walmsley, the agent of the appellant, told him that he would be in Hazlehurst on the following Monday, and wanted the goods there then, and told him to ship'them if he did not telegraph him that night or next day not to do so. Walmsley knew Bowen's business, and he was bound to know that he could do nothing at Hazlehurst without the samples. There was a positive order to him, as the agent of the company, to ship the goods within a certain time unless this order was countermanded within that limit. I concede that from the time of the deposit with the appellant's agent to the time—Saturday evening at farthest—when in obedience to Bowen's orders the goods should have been shipped, the appellant held them as a warehouseman. But when it held them in Jackson after the limited time, the time when, according to Bowen's orders, it should have shipped them to Hazlehurst, it became and was and held the goods as common carrier. After this time the law changed the relation between the parties. It was not done by contract or agreement, but because of the violation of a contract or agreement. See Hutchinson on Carriers, § 63 ; *Barron* v. *Eldridge,* 100 Mass. 455 ; *Watts* v. *R. R. Co.,* 106 Mass. 466 ; *Rogers* v. *Wheeler,* 52 N. Y. 262 ; *Judson* v. *R. R. Co.,* 4 Allen 520 ; *R. R. Co.* v. *Montgomery,* 39 Ill. 335.

2. As to appellant's liability as warehousemen, I concede that in charging the appellant as a warehouseman the burden of proof to show negligence is on appellee. But this burden is fully met when it is shown that the goods were delivered to appellant and returned in a damaged condition. If we strike from the record the evidence of Bowen as to Walmsley's account of the fire, and take the evidence of Walmsley as to the condition of things at the time of the fire, the grossest negligence is shown.

The second instruction given for appellee is in the language used by Mr. Edwards in the last edition of his work on Bailments, 2d edition. See also *Arent* v. *Squire*, 1 Daly 347 ; *Smith* v. *N. Y. C. R. R. Co.*, 43 Barb. 225 ; *Scott* v. *L. & St. C. Dock Co.*, 3 Hurstone & Coltman 596 ; *Collins* v. *Bennett*, 46 N. Y. 490 ; *Bennett* v. *O'Brien*, 37 Ill. 250 ; *Scranton* v. *Baxter*, 4 Sand. 5 ; *Wood* v. *McClure*, 7 Ind. 155 ; *Daniels* v. *Robinson*, 26 Vt. 316–340 ; *N. J. Steam Nav. Co.* v. *Merchants' Bank*, 6 How. U. S. 344–423 ; *Fortune* v. *Harris*, 6 Jones Law N. C. 532.

3. Next it is said that there is error in permitting Bowen to state Walmsley's account of the fire when he went to see him at five o'clock P. M. on Monday after the burning. It will be borne in mind that this was the first interview the plaintiffs or their agents had with the appellant or its agent. This I consider an important factor to be taken into consideration in passing on the admissibility of this evidence. The account which he then gave of the loss is admissible as part of the *res gestæ*. An agent of a railroad corporation, having charge of a depot, is the proper person to inquire of respecting lost baggage, and his answer is part of the *res gestæ*. Thompson's Carriers of Passengers, § 30, p. 539 ; *Curtis* v. *Avon, etc., R. R. Co.*, 40 Barb. 148 ; *Morse* v. *Connecticut R. R. Co.*, 6 Gray 450.

4. Whether appellant was or was not a gratuitous bailee hinges on the question of compensation. Bowen states in his testimony that he was engaged in the sale of clothing as a commercial (evangelist) traveler, and as such he carried in this business the trunks frequently over the defendant's road and the other roads centering at Jackson. Defendant is a common carrier for hire, and in this case the presumption is that it was a carrier for hire, and not a gratuitous one, especially as it was in the habit of carrying the goods in controversy. Hutchinson on Carriers, § 20.

It it not essential to bailment for hire that there should be a payment in advance or an express promise to pay. The compensation may be demanded before the service is rendered or after it is rendered, and the promise to pay may be *express* or *implied;* it may be in the nature of a *quantum meruit*, and it may be for some-

thing which includes the carriage as an incident thereto. Hutchinson on Carriers, §§ 19 and 21, 57 and 117; *Citizens' Bank* v. *The Nantucket S. P. Co.*, 2 Story 2; *Peirce* v. *The Railroad*, 23 Wis. 307; *Aldridge* v. *The Railway*, 15 Com. B. N. S. 582; *Kemp* v. *Caughtry*, 11 Johnson 107; *Harrington* v. *McShane*, 2 Watts 443; *Emery* v. *Hersy*, 4 Greenl. 407; *Mosely* v. *Lord*, 9 Conn. 389.

Arnold, J., delivered the opinion of the court.

Too much importance has been attached to the count in the declaration charging appellant as warehouseman.

The second instruction for appellees, to the effect, that if the goods were delivered to the agent of appellant to be carried over its road to Hazlehurst, whenever Bowen should order them to be shipped, and they were burned before shipment, then it was incumbent on appellant to show that they were burned, *without any fault* on its part or that of its agents, should not have been given. Under the facts assumed by this instruction, a higher degree of proof and care, was imposed on appellant than is required by law. Whether under these facts appellant would have been a gratuitous bailee, or a bailee for hire, it was not liable for any, even the slightest fault or want of care. If a gratuitous bailee, it was liable only for gross negligence—and if a bailee for hire, only for reasonable and ordinary care.

On the facts of record, our view of the law, is, that appellant is liable, if liable at all, as carrier and not otherwise, and that upon the testimony of Bowen, after the loss was proved, the burden of proof was upon appellant to show non-liability as carrier. According to the testimony of Bowen, he delivered the baggage to the agent of appellant, to be shipped on its road to him (Bowen) at a specified place, on the evening of the next day after the delivery, unless he gave directions to the contrary. No directions not to ship were given, and after the time elapsed when they were to have been given, and after the baggage should have been shipped, it was burned in the baggage-room of appellant. It was the duty of appellant to ship on not receiving directions to the contrary. From that time it held the baggage for immediate shipment, and its lia-

bility as carrier attached.   2 Redfield on Railw. 46–49 ; Hutch-
inson on Carriers, § 63 ; *Barron* v. *Eldridge,* 100 Mass.
455.

On the other hand, if it be true, as Walmsley testified, that it
was a regulation of the railroad company, that baggage should be
received only for immediate carriage, and if the baggage regulations
of the company were known to Bowen, as he admitted they were,
and if Walmsley took charge of the trunks as a matter of accommo-
dation to Bowen and without any direction as to their being shipped,
appellant cannot be held responsible for the loss, either as carrier
or otherwise.

The objection to the testimony of Bowen, in regard to what
Walmsley told him as to how the loss occurred, was not well taken.
Walmsley was the proper person of whom to make inquiry re-
specting the lost baggage, and what he said was part of the evi-
dence of the loss and admissible as *res gestæ.*   Thompson on Car-
riers of Passengers 539 ; *Curtis* v. *The Avon R. R. Co.,* 49 Barb.
148 ; *Morse* v. *Conn. River R. R. Co.,* 6 Gray 450.

*The judgment is reversed and cause remanded.*