# SUPERIOR COURT OF BALTIMORE CITY.

Filed June 5, 1906.

UNITED FRUIT COMPANY
VS.
THE NEW YORK AND BALTIMORE TRANSPORTATION COMPANY.

*Randolph Barton, Jr.*, for plaintiff.
*Thomas F. Cadwalader* for defendant.

SHARP, J.—

The plaintiff in this case sues the defendant, a common carrier, for the value of goods destroyed by the fire of February 7th and 8th, 1904.

The goods were the property of the plaintiff, and had been delivered to the defendant in New York on February 1st, 2nd and 3rd, 1904, in a number of packages by several persons, from whom the plaintiff had purchased them. Formal bills of lading were issued in some cases, in others, receipts for the goods were given, but in all cases, except five, the goods were consigned to the plaintiff, and the destination was expressed to be "No. 205 Bowly's Wharf, Baltimore."

The goods were safely transported from New York to the city of Baltimore. The vessel arrived Friday, February 5th, 1904, about 6.30 A. M., at Union Dock, the terminus of the defendant's line in Baltimore. The plaintiff was notified before noon on Friday that the goods had arrived and that the defendant was ready to deliver immediately.

There was some conflict in the testimony in relation to the transactions between the parties after this notice was given, and to ascertain precisely what was said and done by the agents of the parties would be a very difficult task. The witnesses, however, substantially agree on the following facts, which are conclusive.

As the facts about which there was a conflict do not affect the case, they may be left out of consideration.

The defendant proposed to deliver the goods on Friday, but the plaintiff was not ready to receive them, and requested a postponement of the delivery until the following Tuesday. The plaintiff is a merchant engaged in foreign trade, and the goods were to be exported.

On the following Tuesday, a vessel of the plaintiff would be at Bowly's Wharf loading for a voyage. It would be less expensive and troublesome to the plaintiff to postpone the delivery until Tuesday, and then deliver by scows directly to the vessel, instead of delivering at Bowly's Wharf on Friday. A delivery on Friday would require the plaintiff to store the goods at Bowly's Wharf until the vessel arrived. This would have involved extra expense, particularly in the cost of handling the goods. It was, at the suggestion of the plaintiff's agent, agreed by the parties that the goods should not be delivered on Friday, as proposed by the defendant, but retained by it until Tuesday, and then delivered by scows to the plaintiff's vessel.

The vessel of the defendant on which the goods had been brought to Baltimore was to sail on Saturday. After the arrangement was made to defer the delivery until Tuesday, the goods were taken out of the vessel and placed on the defendant's wharf, a safe and suitable place, to be kept until the following Tuesday, and then to be delivered by scows to a vessel at Bowly's Wharf.

On Monday, February 8th, the goods were destroyed in the great fire.

The plaintiff contends that the defendant is liable as carrier and, therefore, as insurer of the goods. The defendant claims to be liable as warehouseman, and responsible only for loss caused by negligence. The claim of the plaintiff is on the theory that the contract was to deliver at No. 205 Bowly's Wharf, and there having been, in fact, no delivery at that place, or any refusal to receive the goods, but delivery having been postponed by agreement until the following Tuesday, the journey contemplated by the original con-

tract was unfinished, and the goods still in the possession of the defendant as carrier.

The plaintiff further contends, if his first contention is not well founded, that the agreement of Friday for a postponement of the delivery until Tuesday must be regarded as a new contract to transport the goods from Union Dock to Bowly's Wharf, and the defendant, having received the goods to be transported, is liable as carrier.

The severe and peculiar liability of a carrier is one imposed by public policy, on account of the risks attending transportation, and the difficulty of ascertaining the cause of and fixing the responsibility for any loss. The owner loses sight of his goods, and to obtain evidence of negligence is generally impracticable. For these reasons the carrier is held responsible, without regard to negligence, for all loss or injury to the goods, except those caused by the act of God, the public enemy, public authority, or the nature of the goods. The carrier is called an insurer.

When a carrier received goods, to be transported, he is ordinarily liable as insurer from the moment he receives the goods, though they are lost when in a warehouse before the journey has begun. In such a case the deposit is a mere incident of the carriage. The liability of a carrier in connection with the delivery of the goods on the completion of the journey is not so well settled.

It has been held in some States ("Mass. Doctrine") that when the journey is finished, and the goods removed from the vessel or car to the warehouse of the carrier, his liability is that of a warehouseman, irrespective of any action by the consignee, 5 Ency. of law, 263; but in other States ("New Hampshire Doctrine") it has been held that the liability of a carrier as insurer does not terminate on the arrival of the vessel, or the train, and the storage of the goods in a warehouse, but continues until the consignee has had a reasonable opportunity to take the goods into his possession. 5 Ency. of Law, 264.

The consignee is bound to take possession of the goods within a reasonable time. If he refuses, or neglects to do so, the carrier's liability changes to that of a warehouseman, and he is liable only for negligence. The owner cannot insist that the carrier shall retain the goods subject to the severe obligations of an insurer, after the reasons for such obligations have entirely ceased to exist.

M. & M. T. Co. vs. Story, Md., 4.

But whatever conflict there may be on these points, it is well settled, that where the goods are in a warehouse and the delay, either in the commencement of the journey, or of the delivery of the goods to the consignee, after the journey has been completed, is the act of the owner, and not of the carrier, the liability of the latter is that of warehouseman.

5 Ency. of L., 260.

St. L., &c., R. R. vs. Montgomery, 39 Ill., 335.

Ill. C. E. R. Co. vs. Tronstine, 64 Miss., 834.

O'Neill vs. N. C. & H. R. R. R., 80 N. Y., 138.

Platt vs. Hibbard, 7 Cowen, 497.

P. C. & St. L. R. R. Co. vs. Barrett, 36 Ohio St., 448.

Schmidt vs. C. & N. R. R. Co., 90 Wisconsin, 504.

Moses vs. B. & M. R. R. Co., 4 Foster, 71.

Watts vs. B. & L. R. R. Co., 106 Mass., 466.

Goodbar vs. Wabash, &c., R. R., 53 Mo. Ap. 434.

In this case the defendant transported the goods safely from New York to Baltimore. The plaintiff was notified on Friday morning that the carrier was ready to deliver them, but the plaintiff was not ready to receive them. The delay in the delivery was not the fault of the carrier. It was at the plaintiff's suggestion and for his convenience, that the delivery was postponed until Tuesday.

It is contended that the true construction of the bills of lading and receipts was that the contract was to deliver at Bowly's Wharf, and in view of the evidence of custom, the same obligation existed in respect to the five packages consigned to Baltimore, without any reference in the bill of lading to Bowly's Wharf, and that, there having been, in fact, no delivery at Bowly's Wharf, or any positive tender by the defendant of a delivery at that place, the journey was uncompleted, and, therefore, the goods

were in the possession of the defendant as carrier.

Strictly, it cannot be said, that the delay was the fault of either party. They made an agreement to postpone the delivery. The action of both parties on Friday in connection with the delivery of the goods was suspended by this agreement, the postponement was certainly at the suggestion and for the benefit of the plaintiff. This being so, the case is controlled by the authorities cited. It must be held that the position of the defendant was that of a warehouseman.

But the rules referred to have no application, where there is an express agreement which controls the carrier's action in connection with the goods. It is important to observe, that neither party to the agreement of Friday contemplated any movement of the goods between Friday and Tuesday. The journey contemplated in the original contract was practically finished, and the carrier was ready to deliver the goods. It was agreed that the delivery should be postponed until Tuesday, when the goods should be placed on scows and brought to Bowly's Wharf. In the meantime, they were to be stored on the defendant's wharf. In other words, between Friday and Tuesday, the defendant was a warehouseman. The risks the parties contemplated between Friday and Tuesday were not those of transportation, but of storage.

The liability of the defendant being that of a warehouseman, and there being no evidence of negligence, the plaintiff cannot recover.

The fourth clause of the bill of lading presents an additional defense against any recovery for those articles for which the plaintiff received bills of lading. It is stipulated that all claim for loss or damage must be made within thirty days after the delivery of the property, or due time for delivery. The plaintiff did not make any claim for the loss of his goods until after that time.

It is of no importance whether the contract required a delivery at Bowly's Wharf, or whether there was a consideration for the postponement of the delivery, and the delivery by scows to Bowly's Wharf, or whether it was expressly agreed that the goods were to be returned by the defendant "at the risk of the plaintiff," about which

there was a great deal of conflict in the testimony. The parties made an agreement, which provided that the defendant should store the goods until Tuesday. This agreement is the controlling feature of this case.

The plaintiff's prayers are correct in principle and are granted, but the finding must be against the plaintiff on the facts. If the delay was the act of the carrier, as stated in the prayer "that the defendant communicated with the plaintiff and proposed, instead of delivering said goods to the plaintiff on Bowly's Wharf by dray, the defendant should do so by scow," etc., the defendant would be liable as carrier, but the evidence does not sustain this hypothesis of fact. It was not the act of the defendant, but the plaintiff which caused the delay. The plaintiff's second prayer is correct in principle, but the finding must be against the plaintiff on the facts.

The defendant's first and second prayers are refused, because they are misleading. They fail to distinguish between the defendant's liability as carrier and warehouseman, as stipulated in articles 2 and 6 of the bill of lading.

The defendant's third prayer is granted.

The defendant's fourth prayer is refused. It depends on the granting of the first and second. These being refused, the defendant's fourth falls also.

The prayers are not correctly numbered, and there is no fifth prayer.

The sixth prayer is refused, as it is misleading. It leaves out of consideration the arrangement made for the postponement of the delivery.

The seventh prayer is refused. There is no evidence which would warrant the finding, that the plaintiff refused to receive the goods. The delivery was postponed by mutual agreement. It could not be fairly inferred from the testimony that the plaintiff would have refused to receive the goods had the defendant insisted on a delivery.

The eighth prayer is refused for reasons already stated in connection with the seventh.

The defendant's motion to strike out testimony is refused, because it is too general.

I will grant the following prayer:

That from the undisputed evidence in the case, it appears that at the time

of the loss of the goods by fire, the defendant held the same as warehouseman and not as common carrier, and as there is no evidence in the case legally sufficient to prove that the loss of the goods while so in defendant's custody was due to any negligence on the part of the defendant, the verdict of the court must be for the defendant.