JAMES QUIGLEY *vs.* THOMAS G. PLANT COMPANY.

Essex.   November 7, 1895. — February 29, 1896.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Master and Servant — Dangerous Machine — Risks of Employment — Action.*

If an employer places a guard on a machine in order to make its operation safer, although it may not have that effect, a person who has for nearly three years been employed upon the machine, which had the guard on it when he entered upon his employment, and which is not itself defective, and who is injured while so operating it by the alleged action of the guard, must be held to have assumed the risk of operating the machine with the guard on, and cannot recover for his injuries.

TORT, for personal injuries occasioned to the plaintiff while in the defendant's employ by the alleged negligence of the defendant. Trial in the Superior Court, before *Bishop*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff suffered the loss of a portion of his hand while operating a Bresnahan dieing-out machine. The object of the machine was to cut or stamp out soles of shoes by the pressure

by steam power of a heavy steel block, called a head block, upon another block, called a die, the leather to be cut being placed between the blocks. The machine was operated by a treadle. Two conical or tunnel-shaped pieces of metal, one with a convex and the other with a concave surface, and adapted to fit into each other, revolved rapidly within from one sixteenth to three sixteenths of an inch apart. One of these pieces of metal was called the collar on the counter shaft, and the other the hub of the loose pulley. When the foot of the operator was placed upon the treadle, these conical pieces of metal were forced by steam pressure together, so as to form one fixed shaft, by the revolution of which the head block descended upon the die, making about ninety-four strokes in a minute, and cutting the sole to the required pattern. When this result was produced, the operator, by removing his foot from the treadle, released the contact of the conical pieces and caused the head block to return to a fixed position away from the die, affording the operator opportunity to insert his hands and take out the sole and any scraps remaining.

The accident was caused by a piece of leather falling into the space between the collar on the counter shaft and the hub of the loose pulley, preventing the loose and fixed pulleys separating when the foot was removed from the treadle, and causing the head block to repeat, and come down on the hands of the plaintiff, which were on the die removing the sole which had just been cut and the scraps of leather cut from it. The piece of leather was produced, and was in evidence at the trial.

A piece of tin called a guard, which did not form part of the machine as originally constructed, was afterwards affixed to it, covering some parts of the machinery, the object being to form a shield or protection, and scraps of leather fell upon it, and thence to the floor. The edge of this guard came directly over the space separating the collar of the counter shaft and the hub of the loose pulley, and the piece of leather which caused the accident fell upon the guard and from the edge of the guard into the aperture between the collar of the counter shaft and the hub of the loose pulley, causing them to become fixed, and preventing them from separating.

The guard was placed on the machine just before the plain-

tiff went to work upon it, in July, 1891, and had remained unchanged upon the machine from the time it was placed upon it down to the time of the accident, March 30, 1894. The Bresnahan machine without this guard was the one in general use in the city of Lynn, where the plaintiff was employed, and the plaintiff for about two years previously to working upon this machine had worked upon a similar machine without a guard.

The plaintiff contended that placing the guard upon the machine in the manner in which it was placed increased the risk in operating the machine; that the guard was improperly placed upon the machine, and by reason of being so placed the machine was defective; that the guard as attached furnished a place where scraps of leather would rest, instead of falling to the floor or being thrown off by the revolution of the counter shaft and pulleys; that it thereby enabled and caused scraps of leather cut from the soles to fall upon the guard, and get into the space between the collar of the counter shaft and the hub of the loose pulley; that if the guard had been properly placed on the machine, the accident would not have happened; that if the guard had not been on the machine, the accident would not have happened; and that the danger attending the use of the machine with the guard so attached, including the peculiar danger from the guard itself, was not open and obvious, and would not be apparent so as to have been seen and understood by a workman making due and reasonable examination, but that, on the contrary, the guard as affixed would mislead and divert one from its true effect, and was an inducement to a false reliance, and in effect a trap.

The defendant did not contend that the plaintiff was not in the exercise of due care. The defendant asked the judge to rule that the evidence would not support a finding for the plaintiff. The judge declined so to rule, but left it to the jury to say whether the character and effect of the machine, with the guard attached as above stated, were open and obvious, so that they could readily have been ascertained by such examination and inquiry as one would be expected to make if he wished to know the nature and peril of the service in which he was about to engage. The judge in all other respects gave the jury instructions not objected to by the defendant.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*W. H. Moody & J. H. Pearl*, for the defendant.

*H. F. Hurlburt*, (*E. T. McCarthy* with him,) for the plaintiff, contended, among other things, that the aperture into which the scrap of leather fell was apparently, but not in reality, covered by the guard, and that the guard should have been carried beyond the aperture so as to cover it, and that the defendant created a trap upon the machine, and created and concealed dangers not ordinarily incidental to the operation of the machine.

FIELD, C. J.   This is an action of tort for personal injuries. The plaintiff at the time of receiving his injuries was between twenty-five and twenty-six years of age, and for about two years before he went to work for the defendant had worked upon a machine known as the Bresnahan dieing-out (or dinking) machine, which was a machine in common use in the shoe factories in Lynn, and was similar to the machine on which he was injured, except that this machine had a tin guard placed over a part of the counter shaft. The plaintiff was a workman whose business it was to cut out soles upon the machine by placing his foot upon and pressing down a treadle, and thus causing the head block of the machine to come down upon a die and cut the soles in shape. He was known as the head dinker in the factory. The defendant is a corporation, and for a long time before the accident had been engaged in the manufacture of shoes in Lynn. The plaintiff entered into the employ of the defendant in July, 1891, and at that time this guard was on the machine, having been placed there by the defendant. The plaintiff continued in the employ of the defendant until he was injured. The plaintiff was injured on March 30, 1894, by a piece of leather falling from the die into the space between the collar on the counter shaft and the hub of the loose pulley, which prevented the loose and the fixed pulleys from separating from each other when his foot was removed from the treadle, and caused the head block to repeat and come down on his hands, which were on the die engaged in removing a sole and the scraps of leather cut from it. The contention of the plaintiff is, that the placing of the guard upon the machine increased

the risk of operating the machine; that it was not an obvious risk; that by reason of the guard being placed on it the machine was defective, because the guard furnished a place on which scraps of leather would rest, instead of falling on the floor or being thrown off by the revolutions of the counter shaft and the pulley; and that if such a guard had been properly placed upon the machine, or if no guard had been placed upon it, the accident would not have happened.

There was a window behind the machine through which there was a good light, and the plaintiff had frequently oiled and cleaned the machine, and the guard was in plain sight. None of the witnesses had ever known a similar accident to occur on a machine without such a guard, and so far as appears no such accident had ever before occurred on the machine used by the plaintiff.

The defendant contended that the guard was a protection against pieces of leather falling into the operative parts of the machine; that it was properly put on; that the danger attending the use of the machine, including all danger, if any, connected with the guard, was obvious, and that the plaintiff took the risk of such an accident as happened; and he, among other things, asked the court to rule that there was not sufficient evidence to warrant the jury in returning a verdict for the plaintiff. The court refused so to rule, and submitted the case to the jury under instructions not excepted to, and the jury found for the plaintiff.

It is plain that the guard was put upon the machine by the defendant for the purpose of preventing the scraps of leather from falling into the parts of the machine which transmitted the power to the head block. The parts of the machine exposed to the falling of scraps of leather upon them from the die were not out of repair or defective in any manner, and the machine as a whole was not defective. It is the construction of the machine with the guard on which is complained of. The chances of any scrap of leather falling and clogging the proper operation of the machine must have been as well known to the plaintiff, who had had nearly three years' experience in operating the machine, as they could be to any one. The defendant had endeavored to make this machine somewhat more safe than those ordinarily

used by putting on the guard; but whether the guard had this effect or not, it would be very difficult for any one certainly to determine. However this may be, we think that the plaintiff must be held to have assumed the risk of operating the machine with the guard on, as it was well known to him that the guard was permanently attached to the machine. The case falls within the principles declared in *Toomey* v. *Donovan,* 158 Mass. 232; *Goldthwait* v. *Haverhill & Groveland Street Railway,* 160 Mass. 554; *Rooney* v. *Sewall & Day Cordage Co.* 161 Mass. 153; *Cassady* v. *Boston & Albany Railroad,* 164 Mass. 168.

We are of opinion that the ruling requested should have been given. *Exceptions sustained.*