## JOSEPH JENKINS, Appellant, *v.* HOOPER IRRIGATION CO., ET AL., Respondents.

### IRRIGATION COMPANIES—NEGLIGENCE—CUSTOM—EVIDENCE.

1. Local customs cannot change the law of negligence; but when reasonable, uninterrupted, and uniform, and not contrary to public policy, they may affect the interpretation of contracts made in their locality. Hence evidence showing the care used by other irrigation companies in cleaning their ditches was not admissible to prove that defendants used due care by cleaning their ditch at the same time and in the same way.

2 The defendants could not gain a prescriptive right to be negligent. Therefore it was error to charge " that if this ditch was operated during the years 1890, 1891 and 1892, and a portion of 1893, in the same manner that it was operated seven years prior to the bringing of the suit, then the plaintiff was barred of any action on account of such conduct." But a majority of the court *held* that this error ought rot to be considered, because the exceptions to the charge were too general.

3. It was competent to prove that a head gate in defendant's ditch was lowered 16 inches after the suit was brought, a: d that the water then flowed down, and ceased to stand in i. *Held*, that this evidence was admissible, as tending to prove that the defendants were negligent in not lowering the gate before the injury complained of.

(No. 622. Decided March 24, 1896. 44 P. R. 829.)

Appeal from the district court of the Fourth judicial district, Territory of Utah, Hon. H. W. Smith, *Judge.*

Action by Joseph Jenkins against the Hooper Irrigation Co., and others, for damages sustained by the negli-

gent use of defendant's canal, whose waters carried alkali onto the land of plaintiff. From a judgment for defendants and an order denying a new trial, plaintiff appeals. *Reversed.*

*Rhodes & Tait,* for appellant.

*Evans & Rogers,* for respondents.

The testimony of the witnesses for respondent, upon which appellant makes assignments of errors 1—6, showing how other ditches were cleaned, was not introduced for the purpose of making a defense to the charge of not cleaning out the ditch, but was proper evidence to meet the evidence of appellant; and was also clearly admissible as impeaching the testimony of appellant. 1 Greenleaf on Evidence, 461; *Artz* v. *R. R. Co.,* 44 Iowa, Par. 288.

This evidence was not admissible for the purpose of excusing negligence, but was admissible to prove what would be negligence. *Barber* v. *Brace,* 3 Conn. 9; *Maxwell* v. *Easton,* 1 Stewt. (Ala.) 514; *Stimson* v. *Jackson,* 58 N. H. 138.

ZANE, C. J.:

This is an action to recover damages to plaintiff's lands, in consequence, as alleged, of the negligence of defendants in control of their irrigation canal. The plaintiff was at the time this suit was instituted, and for many years previous, the owner and occupant of 25 acres of bottom lands (much of it alluvial) on the south side of the Weber river, in Weber county, which he was using, at the happening of the wrongs complained of, as a garden and orchard. The canal was used between the 1st day of May and the 1st day of the following October, each year, to carry water from the river at a point above plaintiff's lands, and through the south or upper side of it, to lands

below, and has been so used for more than 20 years. . The complaint is that defendants' canal, in consequence of their inattention and negligence, became and remained, during the time it was not in actual use for irrigation in 1891, 1892, and 1893, filled up and obstructed near the western or lower boundary of plaintiff's land; so that the water, strongly impregnated with alkali, collected in the canal, flowed to that part of the canal on his land, and stood there to the depth of about 16 inches, and soaked, seeped, and percolated through the bottom and sides of the ditch and loose soil, on, into, and through about 13 acres of his land, killing his orchard, and rendering the soil unproductive. A good deal of evidence was offered by the respective parties upon the issue as to negligence, and admitted. There was also evidence tending to show that the canal on plaintiff's land had but very little fall, and that defendants' head gate, at the lower side of plaintiff's land, was 16 or 18 inches too high, and that the bottom of the ditch at this place was filled up. On the other hand the defendants offered evidence that was admitted to rebut plaintiff's proof. The following questions, propounded by the defendants to certain of their witnesses, were objected to by the plaintiff: Having stated that he was acquainted with other ditches leading from Weber river, a witness was asked: "How was this ditch kept and cleaned with respect to other ditches in that same locality?" Answered: "In the same manner." Another stated he was acquainted with the treatment of ditches taking water out of the same river, and was asked: "What is the general custom in regard to cleaning out these ditches?" Answered: "The general custom is to clean them out once a year,—in the spring." Another witness stated he was acquainted with the care given such ditches in Weber county, and was asked "what the customary manner of maintaining and taking care of

such irrigation ditches was," and answered: "They are usually cleaned out once in the spring. I have seen the Davis and Weber county ditches cleaned out in both the spring and fall." Another, having stated that he was acquainted with the Plain City ditch, and but little acquainted with others, was asked: "What has been the customary manner during the period of time you have been acquainted with that ditch of cleaning it .out?" Answered: "We clean it out every spring." Another witness stated he was acquainted with the control of ditches leading from the Weber river, and was asked: "What is the usual and customary manner of controlling those ditches, and cleaning them out?" Answered: "The ditches are cleaned out once a year,—every spring." Plaintiff's objections to the above questions and answers were overruled, and he excepted to the ruling of the court, and assigns the same as error.

This evidence as to when other irrigation companies cleaned out their canals must have been admitted as tending to prove that defendants were not negligent because they cleaned out their ditch at the same time, or as tending to establish a custom upon which they had a right to rely in their defense. The care and attention which the law required the defendants to give to their ditch, by way of cleaning it out or otherwise, could not be tested by the amount of care and attention given by other companies to theirs. The men in charge of their ditches might have been careless or prudent. They may have exercised reasonable care, or they may not have done so. The conditions under which they maintained theirs, as to the fall of the canal, as to soil, as to their liability to fill up, and as to alkali or other matter collecting in them, may have been similar to those under which the defendants maintained theirs, or the conditions may have been very different. The true standard by which to test the

charge of negligence was one of prudence and care. The care and attention that ought to have been expected of a prudent and reasonable man under similar conditions and circumstances was the degree of care and attention which should have been demanded of the defendants by the jury. If alkali water collected in defendants' canal, and seeped into and upon plaintiff's land, and the defendants knew, or should have known it in the use of reasonable diligence, and could have prevented it in the use of reasonable means, but did not, they were guilty of negligence. If defendants knew, or could have known in the use of reasonable diligence, that alkali water from their canal was injuring plaintiff's land, it was their duty to use all reasonable means to prevent it; and they should have used all such means, though it included the lowering of their head gate, and deepening their canal, whether in the spring or fall, or at any other time.

The care or negligence of other men in charge of other ditches was not material to the issue in this case. The fact that other canals may have been cleaned out in the spring afforded no reasonable inference as to the alleged negligence of the defendants, in issue in this case. Nor was such testimony admissible to prove a custom, to establish rights, and impose duties in favor of or against persons, natural or artificial, independent of contract. Local customs, when reasonable, uninterrupted, and uniform, in a locality or district, and not contrary to public policy, may affect the interpretation of contracts made in their locality, by raising a presumption that such contracts were made with respect to them; but such custom cannot change the law of negligence. To have such effect, it must have been used so long "that the memory of man runneth not to the contrary." It must have become a part of the unwritten law of the land. Customs that do more than to aid in the interpretation or construction of con-

tracts should have a more permanent and durable exist-
ence, and a wider application than a mere local custom.
Customs, to have the effect of law, independent of con-
tract, should be more than a local custom; they should be
a part of the law of the land. The case of *Bolton* v. *Colder*,
1 Watts, 363, was an action to recover damages for
injuries caused by a passing coach. Chief Justice Gibson
said: "The defendants gave evidence of its being a cus-
tom in the latter case for the leading carriage to incline
to the right, the other making the transit at the same
time by the left; whence it was attempted to be shown
that the injury suffered by the plaintiff had been occa-
sioned by his own neglect of this custom, which was said
to have acquired the consistence of law, which was very
properly exploded by the court. * * * The use of
parol proof has been, to say the least, sufficiently
extended by suffering it to control the private written
laws which individuals establish between themselves for
the regulation of their rights in particular transactions,
without suffering it to control the general law of the
land." Chief Justice Kent, in *Frith* v. *Barker*, 2 Johns.
328, said: "Though usage is often resorted to for expla-
nation of commercial instruments, it never is, nor ought
to be, received to contradict a settled rule of commercial
law."

The plaintiff excepted to the following paragraph of the
charge to the jury, and assigns the giving of it as error:
"I charge you that if this ditch has been operated during
the years 1890, 1891, 1892, and a portion of 1893, in the
same manner that it was operated more than seven years
prior to the bringing of this suit, then the plaintiff is
barred of any action on account of such conduct." In
this paragraph, as charged in another part of the charge,
the court told the jurors that if the defendants had used
and operated the canal during the time of the alleged

negligence in the same manner that they had for seven years before that time, then the plaintiff could not recover. That the defendants had a right by prescription, or by express grant, to maintain and use their canal across plaintiff's land, there is no room for doubt. When the right of way or easement is by express grant, its terms will govern, and only that which is necessary to the enjoyment of the easement as granted will be acquired. So with respect to an easement by prescription. The owner of the dominant estate is limited to its reasonable use, and he must exercise all reasonable care in its enjoyment, not to injure the servient estate. And however great his negligence may have been, or however long he may have been guilty of it, he acquires no right to injure the servient estate, or any other person, by his negligence. If the defendants, during the time alleged in the complaint, had injured and damaged plaintiff's property by the negligent use and operation of their canal, the fact that they had negligently used and operated it in the same negligent way and manner for a period of seven years, or any number of years before, furnished no defense to plaintiff's claim. We therefore hold that the court erred in charging the jury that, if the defendants used and operated their canal in the same manner during the time complained of that they had for seven years previous thereto, the plaintiff's right of action was barred. It appeared from the evidence that a head gate in the canal at the west boundary of plaintiff's land was lowered by defendants 16 inches; and the court, after stating to the jury that the change was made after the suit was brought, said that the fact was introduced for the purpose of explaining the position of the ground at the time of the trial, and was no evidence of negligence. "In other words, the change that was made afterwards could not be considered by the jury as evidence that it

was wrong before." If alkali water stood in the ditch to the depth of 16 inches before the gate was lowered, and, in consequence thereof, did not afterwards, there could be no good reason why the jury should not say that it was wrong before the change, and right afterwards; and they had a right to infer that the change was practicable, from the fact that the defendants had made it, and that the neglect to make it before was negligence, if they knew, or, as reasonable men, ought to have known, that it obstructed the flow of the water, and dammed it up to the depth of 16 inches, and thereby injured and damaged plaintiff's land. While the jury might not infer that the defendants conceded that they had been negligent by making the change, the jurors had a right to consider the fact, and to draw any reasonable inference from it, in connection with the other evidence. The judgment and order appealed from are reversed, and the case is remanded to the court below, with directions to grant a new trial.

MINER, J.:

I concur in the result. I think the exceptions to the charge were not taken in time, and therefore cannot be considered by this court.

BARTCH, J.:

I concur in the result, but dissent from that portion of the opinion which has reference to the charge of the court. I do not think that the record shows any exception thereto which presents a question for review on appeal; nor, if I regarded the questions respecting the charge properly before the court, could I concur in the doctrine declared.