JOHN WHELTON *vs.* WEST END STREET RAILWAY COMPANY.

Suffolk.    November 17, 1898. — March 1, 1899.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Street Railway — Master and Servant — Act of Superintendence — Evidence — Assumption of Risk — Action.*

A person was employed by a street railway corporation as a car shifter, whose duty it was to get cars ready for the conductors and motormen. Upon an occasion when a conductor went into the car-house for a car, which had to be moved to the main track by means of a transfer table moved by electric power operated by the car shifter, the latter ran the car on to the table, handed the trolley rope, which had to be shifted to the other end of the car, to the conductor, saying, "Here is the rope," and, when the conductor had walked with the rope half way round to the middle of the car, started the table. The conductor called out to him to wait, as a spring attached to the roof of the car was caught, and the conductor, while trying to free the spring, was injured by the moving of

the table. There was a foreman who had charge of the car-house, but he was not present at the time of the accident. *Held,* in an action for the injury, that the acts of the car shifter were not acts of superintendence, under the employers' liability act, St. 1887, c. 270.

In an action against a street railway corporation for injuries sustained by a conductor, while shifting the trolley rope on a car which had been run on to the transfer table in a car-house, by having his foot caught in a space of about an inch and a half between the bottom of a track rail projecting from the table and the house floor, evidence that after the accident the floor of the car-house was raised so that the projecting rail lay flush with the floor, filling the space in which the plaintiff's foot was caught, and that after the change the table worked perfectly, is rightly excluded.

A street car conductor started to shift the trolley rope on a car which had been run on to the transfer table in a car-house, which was moved by electric power operated by another employee. The conductor was walking on the floor of the car-house, and when he was half way round to the middle of the car the other employee started the table. The conductor called out to him to wait, as a spring attached to the roof of the car was caught, causing the conductor to walk back the other way, and while so doing, and looking up and trying to free the spring, a track rail, which was part of the fittings of the table, and which projected about eighteen inches from it over the car-house floor, with a space of about an inch and a half between the bottom of the rail and the floor, and which was in motion with the table, caught the conductor's foot, and he was injured. He had been in the habit of using the table several times a month for more than a year, besides having an experience of several years with quite similar tables. *Held,* that he could not maintain an action against the corporation for his injury.

TORT, for personal injuries sustained by the plaintiff through the alleged negligence of the defendant. Trial in the Superior Court, before *Sherman,* J., who directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions. The facts appear in the opinion.

*R. W. Nason,* for the plaintiff.

*G. H. Mellen,* for the defendant.

BARKER, J. The plaintiff had had nine years' experience as a street car conductor in the defendant's service. He went into a car-house for a car. The car had to be moved to the main track by means of a transfer table moved by electric power operated by another employee, a car shifter, who, with the plaintiff, were the only persons in the car-house. The car shifter ran the car on to the table. The trolley rope then had to be shifted to the other end of the car. The car shifter handed the trolley rope to the plaintiff, saying, " Here is the rope." The plaintiff, taking the rope, started with it, walking on the floor of the car-house. When he was half way round to the middle of the car

the car shifter started the table.   The plaintiff called out to him
to wait.   A spring attached to the roof of the car was caught,
and this caused the plaintiff to walk back the other way, and
while so doing, and looking up and trying to free the spring, a
track rail which was part of the fittings of the table, and which
projected some eighteen inches from it over the car-house floor,
with a space of about an inch and a half between the bottom of
the rail and the floor, and which was in motion with the table,
caught the plaintiff's toe, threw him down, and pushed him along
the floor and against another rail fastened to the floor.   This
occurred on June 12, 1895.   The transfer table had been put in
on June 2, 1894, replacing one to which power was applied in a
different manner, and with rails projecting only about half as
far.   The plaintiff had been in the habit of using such a transfer
table five or six times a month since the defendant had used
electricity as a motive power.   He might have got upon the car
before the transfer table started, and the trolley rope was of
such a length that, if in shifting the trolley pole he walked on the
car-house floor, he could have kept himself beyond the reach of
the projecting rails.   At one point in his testimony he gave an
affirmative answer to the question whether of course he had not
noticed the projections before, but he testified that he took no
particular notice of them, and that his attention had never been
called to the fact that there was a space between them and the
floor.   He also testified that he was shifting the trolley pole in
the same way he had always been in the habit of doing it at the
times when he had done it, and that he had performed exactly
the same operation in transferring a car probably a week before,
and knew what was to be done.   There was a foreman who had
charge and control of the car-house to whose orders the plaintiff
was subject when he went to the car-house for a car, but the
foreman was not present at the time of the accident.

The declaration has one count under St. 1887, c. 270, for neg-
ligence of a superintendent, and one under the common law for
negligently failing to furnish a reasonably safe place in which to
work.   A verdict for the defendant was ordered upon each count.
The questions for decision are whether the verdict was rightly
ordered, and whether evidence, offered by the plaintiff, that after
the accident the floor of the car-house was raised so that the

projecting rail lay flush with the floor, filling the space in which the plaintiff's foot was caught, and that after the change the table worked perfectly, was rightly excluded.

There was no evidence to support the count under the St. 1887, c. 270. The foreman, who was absent, had no connection with the accident, nor was it in any way due to his absence. The whole evidence as to the duties of the car shifter is that it was his duty to get cars ready for the conductors and motormen. Neither his starting of the table nor his failure to stop it was an act of superintendency.

The evidence as to the raising of the car-house floor after the accident was properly excluded. While evidence that other safer appliances then known might have been used would have been competent, as in *Wheeler* v. *Wason Manuf. Co.* 135 Mass. 294, the evidence excluded was not of that character. *Dacey* v. *New York, New Haven, & Hartford Railroad,* 168 Mass. 479, and cases cited.

Upon the common law count the verdict for the defendant was rightly ordered, for the reason that, upon the circumstances to which the plaintiff himself testified, the risk of having his foot caught by the moving projecting rail, if looking upward at the trolley he walked within reach of the projection, was one which he either knew and appreciated, or ought from his opportunities for observation to have known and appreciated, and which he could have avoided by doing his work in such a way as to keep out of reach of the projection. If he knew the danger, he is prevented from recovering, both because he was careless in not avoiding it, and because he accepted the risk. If he did not know the danger, it was because of a negligent omission to observe what was obvious, and what due care required him to observe and to avoid. Besides an experience of three or four years with quite similar transfer tables, he had for more than a year had numerous occasions to do the same work, in connection with this table, which he was doing when hurt. *Goldthwait* v. *Haverhill & Groveland Street Railway,* 160 Mass. 554, and cases cited. *Goodes* v. *Boston & Albany Railroad,* 162 Mass. 287. *Cassady* v. *Boston & Albany Railroad,* 164 Mass. 168. *Quigley* v. *Thomas G. Plant Co.* 165 Mass. 368. *Barnard* v. *Schrafft,* 168 Mass. 211. *Bell* v. *New York, New Haven, & Hartford Railroad,* 168 Mass. 443.     *Exceptions overruled.*