SILAS H. HAVENS *vs.* R. I. SUBURBAN RAILWAY COMPANY.

PROVIDENCE—FEBRUARY 24, 1904.

PRESENT: Tillinghast, Douglas, and Blodgett, JJ.

(1)  *Negligence.  Principal and Agent.  Admissions of Agent.  Res Gestæ.*

In an action for negligence arising out of a collision, on the ground that defendant employed an unfit and unskilled motorman, a statement by the general manager of the defendant that the servant in question was not a regularly broken-in man and was not competent, made the morning after the accident, is no part of the *res gestæ* and is inadmissible.

(2)  *Principal and Agent.  Admissions of Agent.  Res Gestæ.*

While the declarations or admissions of an agent, made while acting within the scope of his authority in regard to the transactions depending at the very time, may be given in evidence against his principal, as part of the *res gestæ*, those not made at the time of the transaction to which they relate are not competent evidence against the principal, unless they are so immediately connected with the transaction in point of time and circumstance as in fact to constitute a part thereof.

TRESPASS ON THE CASE for negligence.  Heard on petition of defendant for new trial, and petition granted.

TILLINGHAST, J.  This is an action of trespass on the case for negligence, and is brought to recover damages for injuries sustained by the plaintiff, on the 22d day of October, 1900, by reason of a collision between a car of the defendant and a car of the Union Railway Company.  The collision occurred about nine o'clock, P. M., near to the "Royal Mill's switch," so-called, upon the highway at Riverpoint, in the town of Warwick.

The collision was occasioned in this way, viz.:  The car of the defendant, upon which the plaintiff was serving as conduc-

tor, was run by the turnout, at said switch (at which it should have been held), and met the other car upon the single track.

The declaration alleges that the defendant was negligent in that it employed and had upon its car as motorman, at the time of the accident, one Joe Fenner, who was an unfit, unskilled and improper person to serve in that capacity; and that because of his lack of skill and knowledge he ran the car by the turnout and thereby caused the accident by which the . plaintiff was injured.

At the trial of the case in the Common Pleas Division a verdict was rendered for the plaintiff, and his damages were assessed at the sum of $5,000; and the case is now before us on the defendant's petition for a new trial, on the grounds, (1) that the presiding justice erred in the admission of certain testimony; (2) that he erred in his charge to the jury and in his rulings upon certain requests to charge; (3) that the verdict was against the evidence and the weight thereof; and (4) that the damages are excessive.

The ruling complained of in the admission of testimony was this: Henry B. Whitaker, a witness for the plaintiff, was allowed, against objection, to state what Mr. Albert T. Potter, the general manager of the defendant corporation, said to him, the next morning after the accident, about the accident, viz.:

"Q. Has there been a conversation between you and Mr. Potter?  A.  There has.

"Q.  When was it?  A.  .After the accident.

"Q.  How soon after?  A.  The next morning.

"Q.  Was this conversation with reference to what had happened at the accident—was it with reference to this accident?  A.  Yes, sir.

"Q.  What did Mr. Potter say to you about Fenner?  A. He told me not to let him run again.  .. . .

"Q.  Did he say why?  A.  He said he wasn't a regularly broke-in man, and he wasn't competent."

The witness Whitaker was in the employ of the defendant corporation at the time of the accident, in the capacity of foreman of the car-barn and station at Riverpoint; and it was by his direction that Fenner went upon the car as motor-

man on the night of the accident, the regular motorman being absent. There was an approved list of motormen at the car-barn, but Fenner's name was not on the list; and, according to Whitaker's testimony, Fenner had not been instructed or trained as a motorman.

The defendant's objection to Whitaker's testimony as to what Manager Potter told him, as aforesaid, was, first, that it was a statement made so long after the happening of the accident as not to form any part of the *res gestœ;* and second, that it was made by an agent of the defendant who had no power or authority to bind the defendant by anything that he might say in the premises.

The plaintiff contends, on the other hand, that the statement of Manager Potter was part of the *res gestœ,* and hence properly admissible in evidence. He argues that the *res gestœ* in this case was the employment and supplying of an unfit and incompetent fellow-servant, and that the improper action of this fellow-servant at the time of the accident was but the natural and logical result of the defendant's negligence in placing him in a position of responsibility, and that the facts of the accident itself form but a small part of the *res gestœ* of the case.

That the declarations or admissions of an agent, made while acting within the scope of his authority in regard to the trans-actions depending at the very time, may be given in evidence against his principal, as a part of the *res gestœ,* is a well settled rule of law. For where the acts of the agent will bind the principal, there his representations, declarations, and admis-sions respecting the subject-matter will also bind him if made at the same time and constituting a part of the transaction. Sto. Ag. 9th ed. § 134.

But the declarations or admissions of an agent not made at the time of the transaction to which they relate are not com-petent evidence against the principal unless they are so im-mediately connected with the transaction in point of time and circumstance as in fact to constitute a part thereof. See A. & E. Ency Law, 2d ed. vol. I, pp. 695–8, and cases cited .

In *State* v. *Murphy,* 16 R. I. 530, Stiness, J., in considering

the question as to the admissibility of statements made subsequent to the happening of the transaction said: "The principle upon which the admission of such evidence rests is, that declarations after an act may, nevertheless, spring so naturally and involuntarily from the thing done as to reveal its character, and thus belong to it and be a part of it; also to rebut all inference of calculation in making the declarations, and thus to entitle them to credit and weight as evidence of the transaction itself."

In that case the statements which were admitted in evidence as part of the *res gestœ* were made about ten or fifteen minutes after the deadly assault in question, and by the person who was assaulted.

In *Graves* v. *The People,* 18 Col. 170, Chief Justice Hayt, in delivering the opinion of the court, adopts Mr. Wharton's definition of *res gestœ,* which is as follows:

"*Res gestœ* are events speaking for themselves, through the instinctive words and acts of participants, not the words and acts of participants when narrating the events. What is done or said by participants, under the immediate spur of a transaction, becomes thus part of the transaction, because it is then the transaction that thus speaks. In such cases it is not necessary to examine as witnesses the persons who, as participators in the transaction, thus instinctively spoke or acted. What they did or said is not hearsay; it is part of the transaction itself."

(1)     Under the law, as above declared, we fail to see that the evidence objected to in the case at bar was admissible as part of the *res gestœ.* For, in the first place, Mr. Potter was not a participant in the transaction in question, and knew nothing about it until informed thereof the day following; and, in the second place, his declaration or admission did not spring naturally and involuntarily from the thing done, so as to illustrate its character and form a part thereof, but, on the contrary, it was a statement, evidently deliberately made, after learning from another of the happening of the accident. In other words, the statement and admission simply had to do with Mr. Potter's decision that, in view of what had happened

and in view of the incompetency of Fenner, he should not be permitted to again act as motorman. It therefore lacks the most essential elements of *res gestæ*.

That it was competent for the plaintiff to prove, by proper testimony that Manager Potter had previous knowledge of the incompetency of the motorman may be conceded. For it is doubtless true that knowledge by a superintendent or manager having the control and management of a street railroad, including the power to employ and discharge conductors and motormen, is knowledge to the company. *Huntingdon Railway Co.* v. *Decker*, 82 Penn. State 119. But, while this is so, it was held, in the case just cited, that a conversation had with the superintendent on the day following the accident, and relating thereto, to the effect that the conductor had disobeyed orders, etc., was inadmissible; and a new trial was granted on account of the improper admission of this testimony.

The case of *McDermott* v. *Railway Co.*, 73 Mo. 516, is strongly in point in support of the position which we have taken.

There the plaintiff was employed as a laborer on track repairs, and was injured, as he alleged, in consequence of the negligence of one Dawson, the defendant's section foreman, in having permitted a handcar to be on the track when the track should have been clear for the passage of trains, and in negligently and carelessly ordering the plaintiff to remove the car in the face of an approaching train. The plaintiff further alleged that the section foreman was incompetent, and that the defendant had knowledge of that fact before the injury complained of occurred.

To sustain the allegation of the incompetency of Dawson, and the knowledge of the company that he was incompetent, the plaintiff, against defendant's objection, was permitted to testify that some days after the accident he saw Mr. Goodwin, the defendant's road-master when the accident occurred, whose duty it was to employ and discharge section foreman, and that Goodwin told the plaintiff that Dawson was incompetent. And the principal question in that case relates to the admissibility of the evidence referred to.

In delivering the opinion of the court, Henry, J., quotes with approval the statement of Ch. J. Dallas, in Gow's N. P. Rep. p. 456, as follows:  "It is not true that, where an agency is established, the declarations of the agent are admitted in evidence merely because they are his declarations; they are only evidence when they form part of the contract entered into by the agent on the behalf of his principal, and in that single case they become admissible."  Judge Henry then said:  "The declarations of an agent, at a different time, have been decided not to be evidence; indeed, the cases on the subject draw this distinction between the declarations of an agent accompanying the making of, and, therefore, forming a part of the contract, and those made either at a subsequent or antecedent period. This is now the well-established doctrine, and its application to other acts of an agent besides that of making contracts is equally well settled.  The declarations of an agent are received, not as admissions, but as a part of the *res gestæ*."  .  .  .  "The declaration of Goodwin, the road-master, was not made at the time of the disaster to the plaintiff, and had no connection whatever with it in the chain of causation.  The question was whether the company had knowledge of the incompetency of Dawson; and while knowledge on that subject possessed by Goodwin, the road-master, was knowledge of the company, the fact that Goodwin had such knowledge must be proved against the defendant, as any other fact, by the testimony of witnesses, and not by the declaration of third parties; and, so far as proof of that fact is concerned, his declarations, except as a part of the *res gestæ*, stand upon the same footing as declarations made by other persons."  To the same general effect see *Robinson* v. *Fitchburg Ry. Co.*, 7 Gray, 92; *Mich. Cent. Ry. Co.*, v. *Carrow*, 73 Ill. 348; *Luby* v. *H. River Ry. Co.*, 17 N. Y. 131; *Verry* v. *Burlington Ry. Co.*, 47 Iowa, 549; *Gt. Western Ry. Co.* v. *Willis*, 18 C. B. (N. S.) 748; *Memphis Railway Co.* v. *Maples*, 63 Ala. 601; *Bigley* v. *Williams*, 80 Pa. St., p. 107; 1 Greenl. Ev. 16th ed. § 184; *Williamson* v. *Ry. Co.*, 144 Mass. 148; *Vicksburg, &c. Ry.* v. *O'Brien*, 119 U. S. 99; *Packet Co.* v. *Clough*, 20 Wall. 528; *Aldridge's*

*Adm'r.* v. *Furnace Co.,* 78 Mo. 559; *Amer. S. S. Co.* v. *Land-reth,* 102 Pa. St. 131.

Upon examination of the case of *Ward* v. *White,* 86 Va. 212, cited by plaintiff's counsel, we are unable to see that it sustains their position in the case at bar. For, while it holds that the incidents of a particular litigated act which are illustrative thereof may be separated from the act by a considerable lapse of time, yet that in order to be admissible as part of the *res gestæ* "they must stand in *immediate causal relation to* the act." And such was clearly not the fact in the case at bar.

*Mayes* v. *State,* 64 Miss. 330, also cited by plaintiff's counsel, while holding that there are no limits of time within which the *res gestæ* can be arbitrarily confined, yet that, according to all the authorities, the true inquiry is whether the declaration is a verbal act, illustrating, explaining, or interpreting other parts of the transaction, of which it is itself a part, or is merely a history, or a part of a history, of a completed past affair. And that in the one case it is competent, while in the other it is not. *State* v. *Daugherty,* 17 Nev. 376, does not support the plaintiff's case.

The late case of *Roberts* v. *Blakeley Mill Co.,* 70 Pac. Rep. 111, while seeming to furnish some support to the plaintiff's position, yet we do not think it goes to the extent of sustaining it.

In that case the plaintiff's witnesses were permitted to testify to certain statements concerning the accident there in question, made by Mr. Tew, defendant's general superintendent and manager of the railroad.

Mr. Tew arrived at the scene of the wreck about three hours after it occurred. Soon after his arrival he was examining the same, and one of the witnesses testified as follows: "I heard him say—he was looking at the flanges—and he said, 'if the company use any more Tacoma wheels,' he would not work any longer for them."

Another witness testified that Mr. Tew at the same time and place said: "This puts me in a devil of a fix, and I can't be putting in new wheels under the cars all the time."

The court ruled that these declarations were admissible on

the ground that they were spontaneous and tended to explain the transaction, and that so short an interval of time had elapsed between the happening of the accident and the making of said statements as to render premeditation improbable.

It would certainly seem that this was carrying the doctrine of *res gestæ* to an extreme length; and particularly in view of the fact that Tew was not a participator in, or witness of, the transaction in question; and that the admissibility of such testimony was at least very doubtful. But, accepting the decision of the learned court as good law, it falls short of sustaining the plaintiff's position in the case at bar, for here the statements were not made until the next day, and even then they were not made in view of the wreck, but deliberately— presumably at his office—and to an employee, by way of instruction.

The case of *Wabash Ry.* v. *Brow*, 65 Fed. Rep. 941, cited by plaintiff, is a case which undoubtedly sustains the position taken by plaintiff, and in view of the eminence and great learning of Judge Taft and his associates who rendered the opinion, it is certainly entitled to much weight.

The main question discussed in the case, however, was one of jurisdiction, and not the one which is now before us in the case at bar. And it is to be noted that the question of *res gestæ* was passed upon without any discussion or citation of authorities, and it would seem to have been treated as a matter of minor importance in the decision of the case. But however this may have been, the decision upon that question seems to us to be clearly contrary to the great weight of authority, and hence should not be followed.

(2)     But counsel for the plaintiff contend that the testimony in question was admissible on another ground, viz., that the statement was made by the general manager of the defendant, acting within the scope of his authority; that it was a statement made to a subordinate in the course of conducting the business of the defendant in the matter of providing proper servants, and that it was not a statement of knowledge or information gained as a result of the accident, but one regarding the standard set by the defendant for the selection of motormen; and

that the statement .that Fenner was not up to that standard was a fact which was as well known before as after the accident.

In support of this contention the following cases, amongst others, are cited: *Illinois Cent. R.. R.* v. *Tronstine*, 64 *Miss.* 834; *Morse* v. *Conn. River Ry. Co.*, 6 Gray, 450; *Lane* v. *Boston R. R. Co.*, 112 Mass. 455; *Green* v. *Boston & Lowell R. R. Co.*, 128 Mass. 221; *Burnside* v. *Grand Trunk Ry.*, 47 N. H. 554; *McPherrin* v. *Jennings*, 66 Iowa, 622; *Anvil Mining Co.*v. *Humble*, 153 U. S. 540; *McGenness* v. *Adriatic Mills*, 116 Mass. 177; *Oil City Fuel Co.* v. *Boundy*, 122 P. St. 449, 460; *W. U. Tel. Co.* v. *Yopst*, 118 Ind. 248, 259; *C. B. & Q. R. R. Co.* v. *Coleman*, 18 Ill. 297, 299; *St. Louis & San. Fran. R. R. Co.* v. *Weaver*, 35 Kan. 412, 430; *Abbott* v. *'76 Land & Water Co.*, 87 Cal. 323, 328.

These cases are to the general effect that the declarations of an agent, made while acting within the scope of his authority and while the transaction is depending, are admissible in evidence against the principal; a rule which we have hereinbefore recognized, and about which there can be no question.

Thus, in *Morse* v. *Conn. River R. R. Co.*, *supra*, it was held that the statements of the conductor, or baggage-master, in relation to the loss of a trunk on a railroad, made to the owner, upon inquiries by him on the morning after the loss, were admissible upon the ground that such statements were made by them as agents of the defendant, within the scope of that agency and while it continued.

In *Burnside* v. *Grand Trunk Ry. Co.*, *supra*, it was held that the statements of the general freight agent of the defendant as to the condition of goods delivered to him for transportation, made while the goods were in transit, were admissible in evidence against the company. "So long as the duty of the defendants to transport the goods continued," said the court, "the authority of the agent would continue, and so long his declarations in respect to it would be regarded as the declarations of the principal."

In *Green* v. *Boston & Lowell R. R. Co.*, *supra*, the evidence admitted was between the plaintiff and one Rolfe, who was a

freight agent of the defendant, who made the contract with the plaintiff, and who was the person to whom the plaintiff might properly apply to account for the missing case.   And the court held, and very properly, that statements made by him in the course of investigating the matter of the loss would be declarations within the scope of his agency and admissible against the defendant.

While we see no reason to question the soundness of these and other similar decisions, we must hold that, for the reasons already given, they are not applicable to the case at bar, and hence that the second ground taken by plaintiff's counsel in support of the admissibility of the testimony in question is untenable.

And here we may observe that in the case of *Oil City Fuel Co.* v. *Boundy*, 122 Pa. St. 449, which is cited by plaintiff's counsel in support of the proposition last above considered, the court held that, "It is imperative in cases of alleged tortious conduct, such as negligence, unless the act is especially authorized, that the admissions of the agent must be part of the *res gestæ*, otherwise they are hearsay."

The defendant's counsel took exception to the granting by the court of the plaintiff's third request to charge the jury, which request was as follows:   "If the master carelessly place by the side of the servant another, unskilled and incompetent, and damage results to the servant in consequence of it, the master is liable.   And this is so whether the incompetence or want of skill of the fellow-servant existed when he was hired, or has come upon him since and he has been continued in the service with notice or knowledge, or means of knowledge, on the part of the master of the incompetence or unskillfulness."

The court said:   "I am obliged to modify that slightly, so that it will read:   'If the master carelessly place by the side of one servant another, unskilled and incompetent, which unskillfulness and incompetence was unknown to the first named servant, or by the exercise of reasonable care the incompetence and unskillfulness might have been unknown to the first named servant, and danger results to the servant in consequence, the master is liable.   And that is so whether the

incompetence or want of skill of the fellow-servant existed when he was hired, or has come upon him since, and he has been continued in the service with notice or knowledge, or means of knowledge, upon the part of the master of the incompetence and unskillfulness.' "

We see no substantial objection to the request as presented by plaintiff's counsel or to that which was granted by the court, taken in connection with the charge as a whole.

The defendant's fourteenth request to charge was as follows: "Even if the motorman was incompetent, if the defendant did not, or, in the exercise of reasonable care, might not have had knowledge of such fact, the verdict must be for the defendant."

This request was refused subject to exception. That it was correct as a proposition of law can not be doubted; but as we find upon examination of other requests to charge, which were granted, that substantially the same rule of law was laid down, the defendant has no cause of complaint. For, as we have frequently held, if the charge as a whole states the law correctly, it will not be held error on the part of the court to have refused a particular request which was already embodied in the charge. In other words, a court is not called upon to emphasize a particular proposition of law by repeating it to the jury.

The exceptions to the charge, and refusal to charge, are therefore overruled.

Finally, as the declarations of Manager Potter to the witness Whitaker, as detailed by the latter, would naturally have great weight with the jury, and, for aught we know, may have had a controlling influence in determining their verdict upon the question of the competency of the motorman, and also as to the knowledge of the company regarding the same, it is clear that the error in admitting the testimony in question was not a harmless one, but one by which the defendant was prejudiced, and hence that a new trial must be granted. *Graham* v. *Coupe*, 9 R. I. 478; *Tourgee* v. *Rose*, 19 R. I. 432.

It is therefore unnecessary to consider the other grounds relied on by defendant.

Petition for new trial granted.

*John M. Brennan and Richard E. Lyman*, for plaintiff.

*Henry W. Hayes, Frank T. Easton, and Lefferts S. Hoffman*, for defendant.