## CITY OF WYNNEWOOD v. COX.

No. 1509. Opinion Filed March 12, 1912.

(122 Pac. 528.)

1. **APPEAL AND ERROR—Review—Sufficiency of Evidence.** The evidence in support of the verdict of a jury on appeal in this court is regarded as true, and the evidence against it is deemed, for sufficient reasons, to have been rejected; and where all of the evidence supporting a verdict, taken together and given all of the presumptions and deductions to which it is reasonably susceptible, is sufficient, then this court will not go behind the verdict and set it aside, on the ground that the countervailing evidence offered, had it been accepted, would have justified a different one.

2. **MASTER AND SERVANT — Injuries to Servant — Evidence of Subsequent Repairs.** Plaintiff brought action for damages, alleged to have been caused by being struck by a bolt of lightning gathered on the wires of an electric light plant, and by them conveyed into the plant where plaintiff was working, thereby causing his

injury. The specific negligence averred was that the defendant was negligent, in that it had failed to install an adequate number of lightning arresters. Over the objection of the defendant, plaintiff was permitted to prove that immediately after the accident defendant installed a number of additional lightning arresters. The admission of this evidence was error, for the reason that testimony of subsequent repairs or precautions, taken after the happening of an accident causing injury, is not admissible to prove antecedent negligence.

3. EVIDENCE—Declaration of Officer—Admissibility. Plaintiff was injured about midnight; on the next morning, the general superintendent of the electric light plant, in discussing the injuries, said, ''I guess it is my fault.'' This statement was testified to, over the objections of counsel for the defendant, which is a municipal corporation. The admission thereof was error; the declarations or admissions of a public officer cannot be given in evidence to bind a municipality of which he is the agent, unless they are a part of the res gestae. Held, further, the statement was not a part of the res gestae, not being so immediately connected with the transaction in point of time and circumstances as to constitute a part thereof.

4. APPEAL AND ERROR—Discretion of Court—Cross-Examination. The latitude allowed in the cross-examination of expert witnesses is largely in the discretion of the trial court; and, where the same is not shown to have been abused, error cannot be predicated thereon.

(Syllabus by the Court.)

*Error from District Court, Garvin County;*
*R. McMillan, Judge.*

Action by A. G. Cox against the City of Wynnewood. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions.

*Frank L. Robinson, J. T. Wheeler,* and *Patchell & Henderson,* for plaintiff in error.

*J. B. Thompson* and *J. G. Jones,* for defendant in error.

DUNN, J. This case presents error from the district court of Garvin county. December 18, 1908, the defendant in error, as plaintiff, brought action against the plaintiff in error, as defendant, to recover damages for injuries alleged to have been occasioned by and through defendant's negligence in the equipment of its electric light plant, in which plaintiff was an employee.

The petition sets up, in substance, that on or about October 22, 1908, the defendant owned and operated such a plant in the city of Wynnewood; that it caused to be erected near the city a power house, at which was generated the electricity with which the said city furnished light and power to its inhabitants; that to carry the electric current from the power house to the city it caused to be strung on poles about four miles of wire to convey the current from the power house to the different points in and about the city, where the same was distributed; that at the said time the plaintiff was employed at the power house at nights; that during electric and thunder storms the wires became heavily charged with electricity, sufficient to inflict death, or do great injury to those coming in contact with them, and that, by reason of this fact, there arises the peculiar danger of suspending the wires and operating the same without sufficient lightning arresters to carry off the loads of electricity with which they become charged during such storms, all of which was known to the defendant; that, due to the fact that the said system had not been properly protected by the lightning arresters, properly installed, the plaintiff, while in the discharge of his duties in the operation of the plant aforesaid, was struck by a bolt of lightning gathered thereon, which was conducted into the power house, by which he was knocked down, completely paralyzed, and, for the time being, deprived of the power of speech and locomotion; that he lay on the floor of the power house, where so injured, from shortly after 12 o'clock on the morning of October 22, 1908, until about 6 o'clock a. m., when he was found speechless, unconscious, and badly bruised. He avers that, prior to the injury so inflicted, he was of vigorous mind and robust constitution, but that, as a consequence of his said injury, his health and mental capacity have been seriously impaired, and his ability to pursue his usual avocation destroyed. He further alleges that the injuries were caused wholly by the negligence on the part of the defendant, by reason of its failure to equip its said wires with a sufficient number of lightning arresters, properly installed, to arrest the currents of electricity during ordinary electrical storms.

For his injuries, he prayed judgment in the sum of $12,000. For answer, the defendant admitted the employment of plaintiff and his injury, but denied generally and specifically all of the averments of plaintiff's petition, wherein it was alleged that the injuries complained of were due to defendant's fault, and averred that they were the result of an unavoidable and inevitable accident. On the issues thus made, the cause came on for trial before a jury on the 17th of March, 1909, which, on the evidence adduced before it, returned a verdict, finding for the plaintiff, and assessed his damages in the sum of $6,000. After motion for new trial was filed and denied, the cause was lodged in this court for review.

Counsel for defendant, in their abstract and brief, quote copiously from the testimony adduced, both by plaintiff and defendant, to support a specification of error that there is such a want of evidence to sustain the verdict that the judgment rendered thereon cannot be affirmed. The case is argued here as if before a jury; the purpose being to show that by the overwhelming weight of evidence plaintiff should not have recovered. In this, counsel ignore the rule that, if there was any competent evidence introduced on the part of plaintiff reasonably tending to support the jury's verdict, this court would not weigh as against it the other evidence offered. The conclusion reached by a jury is weighed on appeal in this court by that evidence only which supports it. If all of the evidence supporting a verdict, taken together and given all of the presumptions and deductions to which it is reasonably susceptible, is sufficient, then this court will not go behind it and determine what verdict the jury might have returned on the countervailing evidence offered, had it been accepted. The evidence in support of the verdict is here regarded as true, and the evidence against it is considered, for reasons sufficient to the jury, to have been rejected. The argument of counsel is that the evidence offered by plaintiff was unreliable and unsatisfactory on the issue of the proper equipment of the lines with sufficient lightning arresters, and that the evidence offered on its part established the equipment was suffi-

cient. The story of the situation and surroundings at the time of the injury is as follows:

On the morning of the 22d of October, 1908, the plaintiff, employed by the defendant to operate its machinery in the power house of the light plant, was found on the floor of the power house, conscious, but in an almost completely paralyzed condition. The power plant, which is located some distance outside of the city, is a building with brick walls and an iron roof, about 40 by 50 feet in dimensions, extending east and west. The boiler is in the northwest corner, the engine in the southwest corner, while the dynamo is due east of the engine, near the southeast corner, about seven or eight feet west of the east wall, and the pulley wheel on the dynamo, on which the belt from the engine runs, is only about one foot north of the south wall. The switchboard is about ten feet northeast from the dynamo, near the east wall of the building. The outside wire circuits enter through the east wall just back of the switchboard. There are two circuits for conveying electricity to the city, one called the "arc," and the other the "primary circuit." One of these is connected with the dynamo wires by a knife blade switch and the other by plugs. On the morning after the injuries occurred, the plaintiff was found lying breast downward, head about one foot from the dynamo, feet toward the east wall of the building, with an ugly cut an inch and a half long on his chin, severe bruises about the nose and forehead; and the hair about his face, neck and breast and other parts of his body had the appearance of having been singed or burned. He says that just prior to the accident a thunder storm had arisen, and that the lightning struck the line and burned out the dynamo, or was burning it out, and that to prevent further injury he shut the plant down; that he then started his pump, opened the furnace door to prevent the further making of steam, after which the telephone rang. In answering it, he found that Mr. Whitaker, the superintendent of the system, had called him up to ascertain the trouble, and he told him that the dynamo had burned out; whereupon he gave him certain instructions with reference to what to do. He states that at this time

City of Wynnewood v. Cox.

the plant was perfectly still, and that there was a leak in the roof, from which the water was dripping down onto the belt, which he undertook to remove from the pulley. He operated the engine, so that it would run slowly, and secured a broom, for the purpose of pushing the belt off the pulley, and while so engaged in thus pushing the belt with this broom he was suddenly knocked unconscious, and states that this act of his was the last he remembered until the next morning, when he became conscious and found himself lying on the floor unable to arise. He was found early the next morning by parties who came to the plant.

The theory of plaintiff's case is that, owing to insufficient protection by lightning arresters, a heavy charge of electricity came into the plant where he was working, which was communicated to him and resulted in his injury. There were no signs in or about the building to show that it had been struck by lightning, and no theory is advanced by either side to account for plaintiff's injuries, other than in accord with his claim. The defendant makes no claim of ability to account for the occurrence, but offered testimony of experts to show that the plant was well constructed, and that the lines were supplied with the proper number of lightning arresters, and, from certain physical facts existing in reference to the equipment and the known characteristics of electricity, asserts that the claim of plaintiff that he was injured as contended was untenable.

While it is true, as argued by counsel for defendant, in order to even approximately understand and determine the questions of fact presented requires a high degree of technical skill and knowledge, not possessed by the average juror, still there is no other method afforded by the law for the determination thereof; and we are not able to say, after a review of the evidence given by all of the witnesses, including experts, that the affirmative finding of the jury that the plant was insufficiently equipped with lightning arresters, and that the injuries occurred by reason of this defect, found no adequate support in the evidence. Hence we cannot conclude this appeal upon this issue.

There are . other assignments, however, which require a reversal of the judgment rendered and the granting of a new trial. The issue of whether the plant was sufficiently equipped with lightning arresters was the one presented by the pleadings, and about which the contest was hotly waged. The testimony of plaintiff was directed to show that the number was insufficient; while the evidence of the defendant was directed to establish the fact, by professional electricians, that the number with which the plant was equipped was adequate, and that the city was not negligent in this regard. To rebut this evidence, plaintiff then offered, over the objection and exception of the defendant, testimony of certain witnesses showing that immediately after the accident a number of additional lightning arresters were installed. This testimony was as follows:

George Livingstone, witness for plaintiff, testified:

"Q. I will ask you, Mr. Livingstone, if since this accident occurred if the superintendent has made any changes in the lightning arresters? A. Yes, sir. Q. Now describe what changes have been made. A. Why, he put up two sets on the wall on the inside of the building. Q. Two sets? A. Yes, sir. Q. All right; go ahead. A. Then, on the second pole, he put up two sets more. Q. On the second pole? That was the pole where there was one set before. What did he do with the old set? A. He took the second set and set them on a pole further up. Q. What did he place on the second pole, if anything? A. He put two sets of lightning arresters. Q. What else now? Did he make any further changes on that second pole, or at any place on the line? A. Why, put up them two sets on the wall and two sets on the second pole, and taken down them that was on the second pole and moved them up the line further and put them up. Q. About how far up the line? A. A good piece. Q. Give us your best judgment. A. Something like three or four hundred yards."

A. C. Whitaker, witness for plaintiff, testified:

"Q. I believe you said that you removed two [lightning arresters] out there on the second pole? A. Yes, sir. Q. And you put what kind of lightning arresters in their place since the accident? A. I put up the Garten-Daniels in their place, and moved those further down the line."

At the conclusion of the evidence, counsel for defendant asked and was denied an instruction withdrawing from the consideration of the jury the foregoing evidence. Both the admission of this evidence and the refusal of this instruction are specified as error. If error, however, counsel for plaintiff contends that it was harmless, and cites authority from appellate courts of several of the states holding such testimony admissible, and, in the particular cases before them, in some instances holding its admission, even though erroneous, not to have been prejudicial. This is a new question in this jurisdiction, and the vigor with which it is contested has induced us to give it a more extended examination than, perhaps, we otherwise might. It occurs to us that, in view of the character of the issue raised in this case, and in view of the sharp contest over the question of whether there was or was not a sufficient number of lightning arresters, the jury would be inclined to promptly conclude, when the city, after this injury, which was charged to have been occasioned by a deficient number of such appliances, immediately increased their number, that this was proof as true as holy writ that the claim of plaintiff must be true. And when this fact was added to the testimony offered by the plaintiff, would it not in itself be sufficient, if there was doubt on the subject, to eliminate it? In view of these considerations, therefore, can we say, if the admission of this evidence was error, that it was harmless, and that defendant was not prejudiced thereby? On the admissibility of such evidence, a few of the standard texts dealing with the subject have spoken as follows:

6 Thompson's Commentaries on the Law of Negligence, sec. 787:

"It is now settled by the great weight of authority, as well as reason, that evidence of subsequent repairs or precautions taken after the happening of the accident causing the injury is not admissible to prove antecedent negligence. The reasons supporting the principle are thus stated."

And quoting in the text from the language of Justice Earl, in the case of *Corcoran v. Peekskill*, 108 N. Y. 151, 15 N. E. 309, the author, adopting his language, says:

"We think, however, that such evidence does not tend to prove that the party sued knew, or was bound to know, that the machine or structure was imperfect, unsafe, or out of repair. After an accident has happened, it is ordinarily easy to see how it could have been avoided; and then, for the first time, it frequently happens that the owner receives his first intimation of the defective or dangerous condition of the machine or structure which caused or led to the accident. Such evidence has no tendency whatever, we think, to show that the machine or structure was not previously in a reasonably safe and perfect condition, or that the defendant ought, in the exercise of reasonable care and diligence, to have made it more perfect, safe, and secure. While such evidence has no legitimate bearing upon the defendant's negligence or knowledge, its natural tendency is undoubtedly to prejudice and influence the minds of the jury."

Prof. Wigmore, in his work on Evidence (volume 1, sec. 283), says:

"If machines, bridges, sidewalks, and other objects never caused corporal injury, except through the negligence of their owner, then his act of improving their condition, after the happening of an injury thereat, would indicate a belief on his part that the injury was caused by his negligence. But the assumption is plainly false; injuries may be and are constantly caused by reason of inevitable accident, and also by reason of contributory negligence of the injured person. To improve the condition of the injury-causing object is therefore to indicate a belief merely that it has been capable of causing such an injury, but indicates nothing more, and is equally consistent with a belief in injury by mere accident, or by contributory negligence, as well as by the owner's negligence. Mere capacity of a place or thing to cause injury is not the fact that constitutes a liability for the owner; it must be a capacity which could have been known to an owner using reasonable diligence and foresight, and a capacity to injure persons taking reasonable care in its use. On this ground, then, namely, that the supposed inference from the act of improvement is not the plain and most probable one, such acts may be excluded. To be sure, it may be argued that on the general theory of relevancy it would suffice for admissibility, if merely the inference was a fairly possible one, leaving it to the opponent to argue that it was the less probable one. Theoretically, it would be, perhaps, difficult to deny this. But in the present instance an argument of policy has always been invoked to strengthen the case for exclusion. That argument is that the

admission of such acts, even though theoretically not plainly improper, would discourage all owners, even those who had genuinely been careful, from improving the place or thing that had caused the injury, because they would fear the evidential use of such acts to their disadvantage, and thus, not only would careful owners refrain from improvements, but even careless ones, who might have deserved to have the evidence adduced against them, would, by refraining from improvements, subject innocent persons to the risk of the recurrence of the injury. Whatever, then, might be the strength of the objection to such evidence from the point of view of relevancy alone, the added considerations of policy suffice to make clear the impropriety of resorting to it. On one or another, or both, of these grounds have most courts rested their reasoning."

Judge Elliott, in his work on Evidence (section 228, vol. 1), says:

"After much conflict among the authorities and vacillation on the part of some of the courts, it is now settled by the overwhelming weight of authority, as well as reason, that evidence of subsequent repairs made or precautions taken after an accident or the infliction of an injury is not admissible to prove antecedent negligence. To admit such evidence as tending to show antecedent negligence would discourage all endeavor to improve existing conditions, put a penalty upon conscientious persons, and deny to the party the benefit of the light shed by experience. Nor is it fair to torture into an admission the performance of a duty which the occurrence of the accident or injury demonstrates or makes known, perhaps, for the first time, and without any reason having before existed to suppose that there was a defect or danger."

Volume 8, Ency. of Evidence, p. 914, epitomizes the conclusions reached by the courts from nearly all of the states of the Union, as follows:

"Evidence of alterations, repairs, or additional safeguards after the accident is not ordinarily competent, either to show the defective condition at the time of the accident, or for other purposes. Even where the evidence is put in by the defendant, it cannot be considered by the jury in determining whether or not the thing was in a defective condition at the time of the accident. For such evidence has no legitimate tendency to show unsafeness before the accident, and thus is irrelevant, for the reason that the change may as well have been prompted by infor-

mation with which defendant was chargeable previously, and accordingly the exercise of greater care after the accident does not reasonably tend to show a want of previous due care."

See, also, 29 Cyc. 616, and 21 Am. & Eng. Ency. Law, 521.

The foregoing texts find their support in nearly an unbroken current of decisions from the courts of last resort, not only of the states of the Union, but the United States Supreme Court and the courts of England and Canada. The case of *Beever v. Hanson*, 25 L. J. Notes of Cases, 132, opinion in which was written by L. C. J. Coleridge, seems to be a leading case on this subject. In that case, it is said:

"Now, a perfectly humane man naturally makes it physically impossible that a particular accident which has once happened can happen again, by fencing or covering, or, at any rate, making safe the particular thing from which it arose. That, however, is no evidence of, and I protest against its being put forward as evidence of, negligence. A place may be left for a hundred years unfenced, when at last some one falls down it; the owner, like a sensible and humane man, then puts up a fence, and upon this the argument is that he has been guilty of negligence, and shows that he thought the fence was necessary, because he put it up. This is both unfair and unjust. It is making the good feeling, the right principle, of a man evidence against him."

Cases holding such evidence inadmissible, and that its reception is not harmless, but prejudicial error, may be noted as follows: *Davis v. Kornman,* 141 Ala. 479, 37 South. 789; *Prescott & Northern Ry. Co. v. Smith,* 70 Ark. 179, 67 S. W. 865; *Helling v. Schinler,* 145 Cal. 303, 78 Pac. 710; *Zimmerman et al. v. Denver Consolidated Tramway Co.,* 18 Colo. App. 480, 72 Pac. 607; *Nalley v. Hartford Carpet Co.,* 51 Conn. 524, 50 Am. Rep. 47; *Chielinsky v. Hoopes & Townsend Co.,* 1 Marv. (Del.) 273, 40 Atl. 1127; *Georgia Southern & Florida Ry. Co. v. Cartledge,* 116 Ga. 164, 42 S. E. 405, 59 L. R. A. 118; *Giffen v. City of Lewiston,* 6 Idaho, 231, 55 Pac. 545; *Howe et al. v. Medaris,* 183 Ill. 288, 55 N. E. 724; *Terre Haute & Indianapolis Ry. Co. v. Clem,* 123 Ind. 15, 23 N. E. 965, 7 L. R. A. 588, 18 Am. St. Rep. 303; *Beard v. Guild,* 107 Iowa, 476, 78 N. W. 201; *Cherokee & P. Coal & Mining Co. v. Britton,* 3 Kan. App. 292, 45 Pac. 100;

*Standard Oil Co. v. Tierney,* 92 Ky. 367, 17 S. W. 1025, 14 L. R. A. 677, 36 Am. St. Rep. 595; *Washington, etc., Turnpike Co. v. Case,* 80 Md. 36, 30 Atl. 571; *Whelton v. West End Street Ry. Co.,* 172 Mass. 555, 52 N. E. 1072; *Zibbell v. City of Grand Rapids,* 129 Mich. 659, 89 N. W. 563; *Hammargren v. City of St. Paul,* 67 Minn. 6, 69 N. W. 470; *Mahaney v. St. Louis & H. Ry. Co.,* 108 Mo. 191, 18 S. W. 895; *Pribbeno v. Chicago, B. & Q. Ry. Co.,* 81 Neb. 657, 116 N. W. 494; *Aldrich v. Concord & Montreal Railroad,* 67 N. H. 250, 29 Atl. 408; *Getty v. Town of Hamlin et al.,* 127 N. Y. 636, 27 N. E. 399; *Raper v. Wilmington & Weldon R. Co.,* 126 N. C. 653, 36 S. E. 115; *Cleveland Provision Co. v. Limmermaier,* 4 O. C. D. 240; *Skottowe v. Oregon Short Line, etc., R. Co. et al.,* 22 Or. 430, 30 Pac. 222, 16 L. R. A. 593; *Baran v. Reading Iron Co.,* 202 Pa. 274, 51 Atl. 979; *McGarr v. National & Providence Worsted Mills,* 24 R. I. 447, 53 Atl. 320, 60 L. R. A. 122, 96 Am. St. Rep. 749; *Farley v. Charleston Basker & Veneer Co.,* 51 S. C. 222, 28 S. E. 193, 401; *Railroad v. Wyatt,* 104 Tenn. 432, 58 S. W. 308, 78 Am. St. Rep. 926; *St. Louis, A. & T. Ry. Co. v. Johnston et al.,* 78 Tex. 536, 15 S. W. 104; *Virginia & N. C. Wheel Co. v. Chalkley,* 98 Va. 62; 34 S. E. 976; *Carter v. City of Seattle,* 21 Wash. 585, 59 Pac. 500; *Kreider v. Wisconsin River Paper & Pulp Co.,* 110 Wis. 645, 86 N. W. 662; *Southern Pac. Co. v. Hall,* 100 Fed. 760, 41 C. C. A. 50; *Cle v. Canadian Pacific R. W. Co.,* 19 Ontario Practice Rep. 104; *Columbia & Puget Sound R. Co. v. Hawthorne,* 144 U. S. 202, 12 Sup. Ct. 591, 38 L. Ed. 405.

The Supreme Court of Nebraska, in the case of *Pribbeno v. Chicago, B. & Q. Ry. Co. et al., supra,* in a very satisfactory discussion of this case, says that it found only three courts in the United States which permit the introduction of that class of evidence, naming them as Utah, Kansas, and Pennsylvania. In the investigation which we have made, as will be seen, if Pennsylvania ever adhered to this doctrine, it repudiated it in the case which we have cited above, *Baran v. Reading Iron Co.* The case from Utah (*Jenkins v. Hooper Irrigation Co. et al.,* 13 Utah, 100, 44 Pac. 829) appears to have been decided by the

court with no consideration whatsoever of any authority upon this important proposition, as no text or case of any kind is cited in support of the holding; while the later cases from Kansas are predicated solely upon their own prior decisions, beginning back in the case of *St. Joseph & D. C. R. Co. v. Chase,* 11 Kan. 47, decided in 1873. The following states, among the foregoing, appear at one time to have held to the doctrine contended for by counsel for plaintiff, but it seems they have now repudiated it and accepted the general common-law rule on the subject: California, Georgia, Illinois, Indiana, Massachusetts, Minnesota, New Hampshire, New York, Pennsylvania, Washington, and Wisconsin. Thus evidencing a tendency on the part of all modern authorities to pursue on this question what the Supreme Court of Georgia, in the case of *Georgia Southern & Florida Ry. Co. v. Cartledge, supra,* says is the path "which all good courts should travel."

Nor, in our judgment, was the evidence of witness Norwood, admitted over objection, as to the statement made by A. C. Whitaker, superintendent of the plant, when he came to the power house the next morning, admissible. It appeared that the witness and the said superintendent, some six or eight hours after the accident, were in conversation together, and on being asked to give the substance thereof the witness said, referring to the superintendent:

"We were talking about him [Cox] being hurt and his condition and the condition of the machine, and he said he supposed, maybe—'I guess it is my fault.' "

The objection was that the evidence was incompetent, being the declaration of an agent made subsequent to the accident and only conjecture, and could not bind the principal. In defense of this objection, counsel for plaintiff insist that, as corporations can act only through their agents, and as Whitaker was the general superintendent of this lighting system, he was therefore the agent of the city, and his acts and statements were the acts and statements of the corporation; and also, that if the statement was not received as an admission, it was admissible as a part of the *res gestae*. In neither of these contentions are we able

to concur. The general rule is laid down in the case of *Garske v. Town of Ridgeville,* 123 Wis. 503, 102 N. W. 22, 3 Ann. Cas. 747, to be, in substance, that declarations or admissions of a public officer cannot be given in evidence to bind a municipal corporation of which he is the agent, unless they are a part of the *res gestae.* This case is fully annotated in volume 3, American & English Annotated Cases, at pages 747, 749. And that the statement here sought to be introduced was not a part of the *res gestae,* we think is clear from the circumstances under which it was given.

"*Res gestae,*" as said by Mr. Wharton, in his work on Criminal Evidence (section 262), "are events speaking for themselves, through the instinctive words and acts of participants, not the words and acts of participants when narrating the events. What is done or said by participants, under the immediate spur of a transaction, becomes thus part of the transaction, because it is then the transaction that speaks. In such cases, it is not necessary to examine as witnesses the persons who, as participators in the transaction, thus instinctively spoke or acted. What they did or said is not hearsay; it is part of the transaction itself."

This court, in conformity with the principle above declared, discussing the facts in the case of *Coalgate Co. v. Hurst,* 25 Okla. 588, 107 Pac. 657, speaking through Mr. Justice Williams, said:

"The defendant [plaintiff in error] offered to prove by one of its employees that within twenty or thirty minutes after the accident, in a conversation with Jenkins, near the entrance of the mine, whilst he was then in a semiconscious, or what was termed by the witness as a 'flighty or groggy,' condition, that he said: 'I asked Jenkins where his buddy was, and he stated: "He is on ahead, dead, all right. My lower limbs are paralyzed. I told him not to fire the shot; but he said he would go ahead and fire it anyhow."' Was it a part of the *res gestae?* If so, it should have been admitted; otherwise not. Was the alleged statement spontaneous and so connected with the main fact under consideration as to illustrate its character, or to form, in conjunction with it, one continuous transaction? Jenkins was a servant of the master, and may have fired this shot that caused the accident, and when confronted with his coemployee, with the

inquiry as to where his 'buddy' was, being apprehensive as to the consequence of his act, he may have sought to escape such responsibility by placing it upon his coemployee. It does not appear that the ruling of the court in the exclusion of this evidence, under the circumstances, was error. *Gowen v. Bush,* 76 Fed. 349, 22 C. C. A. 196; *Fredenthal v. Brown & McCabe,* 52 Ore. 33, 95 Pac. 1116; *L. & N. R. Co. v. Pearson, Adm'r,* 97 Ala. 211, 12 South. 176."

The case of *Havens v. Rhode Island Suburban Railway Co.,* 26 R. I. 48, 58 Atl. 247, annotated in 3 Ann. Cas. 617, was one wherein the facts were closely analogous to those in the instant case. The admissibility of the statements therein made was urged for the same reasons as are urged by counsel for plaintiff in the case at bar. The facts therein appear to be substantially as follows: Plaintiff sustained injuries on the 22d day of October, 1900, by reason of the collision of two electric cars, which occurred about 8 o'clock at night, and witness Whitaker was allowed, over objection, to state that Potter, the general manager of the defendant corporation, said to him the morning after the accident, as follows:

"Q. Has there been a conversation between you and Mr. Potter? A. There has. Q. When was it? A. After the accident. Q. How soon after? A. The next morning. Q. Was this conversation with reference to what had happened at the accident; was it with reference to this accident? A. Yes, sir. Q. What did Mr. Potter says to you about Fenner? A. He told me not to let him run again. * * * Q. Did he say why? A. He said he wasn't a regularly broke-in man, and he wasn't competent. * * * The defendant's objection to Whitaker's testimony as to what Manager Potter told him, as aforesaid, was, first, that it was a statement made so long after the happening of the accident as not to form any part of the *res gestae;* and, second, that it was made by an agent of the defendant, who had no power or authority to bind the defendant by anything that he might say in the premises."

The court held the admissions of this evidence error, and the syllabus to the case is as follows:

"The declarations or admissions of an agent, not made at the time of the transaction to which they relate, are not competent evidence against his principal, unless they are so immediately

connected with the transaction in point of time and circumstance as in fact to constitute a part thereof."

This case is elaborately annotated with a collation of authorities from nearly every state in the Union, which state the correct rule on the proposition.

While the uncertain character of the testimony tendered was such that it would not have been sufficient, standing alone, to have required or compelled reversal of the cause, for the reason that, probably, it was without influence upon the verdict, still in a new trial, being inadmissible, it should not be accepted.

There is no merit in the other contentions in reference to the admissibility of evidence and the latitude allowed by the court in the cross-examination of the expert witnesses offered by the defendant. This is largely in the discretion of the trial court; and it does not appear to us that the same was abused.

On the matter of instructions, this court has laid down the rule of the degree of care required at the hands of those manufacturing, using and selling electricity in the cases of *Shawnee Light & Power Co. v. Sears,* 21 Okla. 13, 95 Pac. 449, and *La Dow v. Okla. Gas. & Elec. Co.,* 28 Okla. 15, 119 Pac. 250, and with these cases before the trial court it ought not to experience difficulty in properly defining the issues on a new trial; so we deem a discussion of the instructions given and refused as unnecessary.

The cause is accordingly reversed and remanded, with instructions to grant defendant a new trial.

All the Justices concur.